## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

|  |  |  |
|---|---|---|
| MATCH.COM, L.L.C. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CASE NO.:  1:12-cv-363 AJT (IDD) |
| FIESTA CATERING INTERNATIONAL, | ) | |
| INC., (Barbados); FIESTA CATERING | ) | |
| INTERNATIONAL, INC., (Anguilla); | ) | |
| CYTEK, LTD.; KAMPARRI TRADING | ) | |
| LIMITED; DAVID N. RICKHAM | ) | |
| (an individual); and JOHN DOES 1-4 | ) | |
| (individuals not yet identified) | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION;

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED; AND

## MOTION TO STRIKE IN REM ALLEGATIONS AND TO DROP THE DOMAIN NAME DEFENDANTS AS PARTIES

Defendants Kamparri Trading Limited ("Kamparri"), Fiesta Catering International, Ltd. (Anguilla) ("Fiesta Anguilla"), Cytek, Ltd. ("Cytek"), and Fiesta Catering International, Ltd. (Barbados) ("Fiesta Barbados") pursuant to Federal Rule of Civil Procedure 12(b)(2), hereby respectfully move this Court to dismiss Plaintiff Match.Com, L.L.C.'s ("Match") Amended Complaint [DE 6] for lack of personal jurisdiction over the Defendants.  Fed.R.Civ.P. 12(b)(2). Should this Court decide not to dismiss this action in its entirety for lack of personal jurisdiction, then Defendants alternatively move to dismiss the Complaint for failure to state a claim upon which relief may be granted.  Fed.R.Civ.P. 12(b)(6); Fed.R.Civ.P. 12(g)(1)-(2).  Likewise,

Defendants also move to strike the allegations of an *in rem* basis for jurisdiction and to drop the domain names as parties from Plaintiff's Amended Complaint.  Fed.R.Civ.P. 12(f); Fed.R.Civ.P. 21; Fed.R.Civ.P. 12(g)(1)-(2).  In support thereof, Defendants state as follows:

[BALANCE OF PAGE INTENTIONALLY LEFT BLANK]

## TABLE OF CONTENTS

I.   INTRODUCTION.................................................................................................. 1

II.  THE COURT LACKS PERSONAL JURISDICTION OVER EACH OF THE
     DEFENDANTS. ................................................................................................ 2

     A.  Plaintiff Cannot Satisfy Virginia's Long-Arm Statute........................................... 3

     B.  Plaintiff Cannot Satisfy Due Process. ...................................................................... 8

III. PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE
     GRANTED..................................................................................................... 10

     A.  Plaintiff Fails to State a Claim for Counterfeiting................................................. 12

     B.  Plaintiff's Failure to Distinguish Between the Defendants is Fatal to It's
         Attempt to Meet the *Twombly* Pleading Standard .................................................... 14

     C.  Plaintiff Fails to State a Claim for Contributory Infringement ......................... 16

IV.  ALLEGATIONS OF IN REM JURISDICTION MUST BE STRICKEN AND THE
     DOMAIN NAMES SHOULD BE DROPPED AS NAMED PARTIES. ......................... 17

V.   CONCLUSION ............................................................................................... 20

# TABLE OF AUTHORITIES

### CASES

*ALS Scan, Inc. v. Digital Service Consultants, Inc.,* 293 F.3d 707, 715 (4th Cir. 2002) --- 6, 7, 8, 9

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009)----------------4, 11

*Beckwith v. BellSouth Telecomm. Inc.*, 146 Fed.Appx. 368, 371, 2005 WL 2012667 (11th Cir. 2005) ------------------------------------------------------------------------------------------------------14

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)iii, 4, 11, 14, 15

*Bird v. Parsons,* 289 F.3d 865, 876 (6th Cir. 2002)-------------------------------------------------- 5

*Blue Ridge Bank v. Veribanc,* 755 F.2d 371 (4th Cir. 1985)----------------------------------------- 3

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985)--------------------------------------- 8

*Byrne v. Nezhat,* 261 F.3d 1075, 1129 (11th Cir. 2001)------------------------------------------14

*Calder v. Jones,* 465 U.S. 783, 788 (1984) ------------------------------------------------------- 8

*Carpenter v. County School Bd., Fairfax County*, 107 Fed.Appx. 351 (4th Cir. 2004)-------------11

*DeSantis v. Hafner Creations, Inc.*, 949 F.Supp. 419, 423 (E.D. Va. 1996) ------------------------ 3

*Dodge v. CDW Gov't, Inc.*, 2009 WL 1605010, *3 (E.D.Va.)--------------------------------------16

*Ellicott Mach. Corp. v. John Holland Party, Ltd.,* 995 F.2d 474, 477 (4th Cir. 1993)-------------- 2

*Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) ------------------------------------- 10, 11

*Genetic Technologies Ltd. v. Interleukin Genetics Inc.*, 2010 WL 3122304, *2 (W.D.Wis.)------ 4

*Gen-Probe, Inc. v. Amoco Corp.*, 926 F.Supp. 948, 962 (S.D. Cal. 1996)--------------------------15

*Glassman v. Arlington County, VA*, 628 F.3d 140, 145-146 (4th Cir. 2010) ------------------------11

*Goerlich v. Davis*, 1991 WL 195772, *1 (N.D.Ill.) ------------------------------------------------10

*Graham & Buffet, Ltd. v. www.vilcabamba.com*, 2006 WL 851253, *2 (W.D.Wash.) ------------19

*Haley Paint Co. v. E.I. Dupont De Nemours and Co.*, 775 F.Supp.2d 790, 798-99 (D.Md. 2011) 4

iv

*Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 413-15 nn. 8-9 (1984) ------------- 8

*Indianapolis Colts, Inc. v. Metro. Baltimore Football Club, L.P.,* 34 F.3d 410, 411 (7th Cir. 1994) ------------------------------------------------------------------------------------------------------- 5

*International Shoe Co. v. Washington,* 326 U.S. 310, 320 (1945) -------------------------------- 8

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 854 (1982) ------------------- 16

*JB Oxford Holdings, Inc. v. Net Trade, Inc.*, 76 F.Supp.2d 1363, 1368 (S.D. Fla. 1999) ---------- 5

*Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 983 (9th Cir. 1999) ----------- 16

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC,* 507 F.3d 252, 269 (4th Cir. 2007)----- 12

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999)--------------------- 17

*MyKey Technology, Inc. v. TEFKAT LLC*, 2012 WL 3257655, *2 (D.Md., slip copy, Aug. 7, 2012) -------------------------------------------------------------------------------------------------- 4

*Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1199 (4th Cir. 1993) --------------------------------- 8

*Nida v. Nida,* 118 F.Supp.2d 1223, 1228 (M.D. Fla. 2000) ----------------------------------------- 5

*Nietzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827 (1989) ------------------------------------- 10

*Palnik v. Westlake Ent., Inc.,* 344 Fed.Appx. 249, 251 (6th Cir. 2009) --------------------------------- 4

*Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1322 n.2 (9th Cir. 1998)------------------------- 5

*Porsche Cars N. Amer., Inc. v. Porsche.net, et al.*, 302 F.3d 248, 259-60 (4th Cir. 2002)--------- 18

*Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp.*, 711 F.2d 989, 995 (11th Cir. 1983) ----------------------------------------------------------------------- 10, 11

*Ratliff v. Cooper Laboratories, Inc.,* 444 F.2d 745, 748 (4th Cir.) ------------------------------------- 8

*Sewraz v. Morchower*, 2009 WL 211578, *1 (E.D. Va. Jan. 28, 2009) ------------------------------ 14

*Shaffer v. Heitner,* 433 U.S. 186, 204 (1977) ------------------------------------------------------- 8

*Size, Inc. v. Network Solutions, Inc*., 255 F.Supp.2d 568, 572 (E.D.Va. 2003) ---------------------- 16

*Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2nd Cir. 2002)------------------------- 11

*U.S. ex rel. Asphalt Roads and Materials Co., Inc. v. Western Ins. Co*., 2012 WL 2930693, *2 (E.D.Va.) (slip copy)------------------------------------------------------------------------------- 17

*Vance's Foods, Inc. v. Special Diets Europe Ltd*., 2012 WL 1353898, *12 (E.D. Cal.) (slip copy, Apr. 16, 2012) --------------------------------------------- 4

*Veltmann v. Walpole Pharmacy, Inc.*, 928 F.Supp. 1161, 1163-64 (M.D. Fla. 1996)-------------- 15

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ----------------------------- 10

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D. Pa. 1997) ----------------------- 6

STATUTES

15 U.S.C. § 1051 ---------------------------------------------------------------------------------------- 4

15 U.S.C. § 1116(d)(1)(B)(i) ------------------------------------------------------------------------- 12

15 U.S.C. § 1125(d)(2) --------------------------------------------------------------------------------- 17

15 U.S.C. § 1125(d)(1) --------------------------------------------------------------------------------- 18

15 U.S.C. § 1127 ---------------------------------------------------------------------------------------- 12

Va. Code. Ann. § 8.01-328.1 -------------------------------------------------------------------------- 2

RULES

Fed.R.Civ.P. 8(a) ------------------------------------------------------------------------------------2, 4, 11

Fed.R.Civ.P. 10(b) ------------------------------------------------------------------------------------- 14

Fed.R.Civ.P. 12(b)(6) ---------------------------------------------------------------------------------- 10

Fed.R.Civ.P. 12(f) ------------------------------------------------------------------------------------ 17, 18

Fed.R.Civ.P. 21 --------------------------------------------------------------------------------------- 17, 18

Fed.R.Evid. 201 --------------------------------------------------------------------------------------5, 13

vi

**MEMORANDUM**

## I.      INTRODUCTION

Plaintiff's Amended Complaint [DE 6] alleges three causes of action, including: trademark infringement, including through use of a counterfeit mark, under 15 U.S.C. §1114, [Count I, Am.Compl., ¶¶ 1-31]; unfair competition, false representation, and false designation of origin under 15 U.S.C. §1125(a), [Count II, Am.Compl., ¶¶ 1-39]; and cyberpiracy under 15 U.S.C. §1125(d) [Count III, Am.Compl., ¶¶ 1-44].   However, none of those claims may proceed unless Plaintiff first demonstrates that this Court has personal jurisdiction over *each* of the Defendants against whom they are asserted.   *See* Fed.R.Civ.P. 8(a)(1), 12(b)(2).

However, perhaps due to its initial pursuit of *in rem* jurisdiction, Match entirely ignored the essential requirement of personal jurisdiction over the entity defendants.   Indeed, Match failed to allege sufficient facts to support a finding of personal jurisdiction over each Defendant. Instead, Match asserted only an inaccurate, undifferentiated and formulaic allegation of personal jurisdiction for all Defendants in unison, which its other allegations contradict.   Plaintiff cannot now correct that error, because the evidence now before this Court shows that the Defendants each lack the necessary contacts with the State of Virginia to satisfy Virginia's long-arm statute and due process.   Therefore, because it lacks personal jurisdiction over each of the Defendants, this Court must dismiss this action with prejudice.

Nevertheless, in accordance with Rule 12(g), there are issues that must be addressed in the alternative, otherwise they are waived.   Among those issues, is Plaintiff's failure to properly plead or sufficiently support its claims.   Plaintiff's Amended Complaint is plagued by vague, ambiguous, speculative and unduly broad allegations, which require its dismissal.   Indeed, Plaintiff's undifferentiated allegations made upon mere information and belief have made it

impossible to understand what Match is alleging as the basis for each party's liability for each of the three causes of action. Moreover, regardless of which particular Defendant(s) is the subject of its various claims, Match has failed to satisfy its Rule 8 obligation to allege a sufficient factual basis for its claims of counterfeiting and contributory infringement. Accordingly, as further explained below, this Court should dismiss the Amended Complaint for failure to state a claim upon which relief may be granted.

Finally, there are several immaterial and impertinent allegations present in the Amended Complaint that are likely to confuse the issues and should be stricken, including allegations aimed at establishing *in rem* jurisdiction, which the Plaintiff cannot possibly achieve in this matter. Likewise, there is property (the domain names) that Match has named as parties, over which there cannot possibly be any jurisdiction. Accordingly, this Court should strike the *in rem* allegations and drop the domain names as parties to this action.

## II.    THE COURT LACKS PERSONAL JURISDICTION OVER EACH OF THE DEFENDANTS.

The Fourth Circuit has adopted a two-step analysis for determining whether a court may exercise jurisdiction over a foreign corporation. *See, e.g., Ellicott Mach. Corp. v. John Holland Party, Ltd.,* 995 F.2d 474, 477 (4th Cir. 1993). This Court may only exercise personal jurisdiction over a foreign corporation when jurisdiction is authorized by Virginia's long-arm statute, and when the exercise of jurisdiction comports with Constitutional Due Process considerations. *Id.* Of the four Defendants that Plaintiff has served in this action, three—Fiesta Barbados, Fiesta Anguilla, and Kamparri—do not have **_any_** contacts with the forum; thus, neither Virginia's long-arm statute, Va. Code. Ann. §8.01-328.1, nor Due Process can be

2

satisfied.   The lone remaining Defendant—Cytek—has contacts with the forum that are so minimal as to render an exercise of jurisdiction over it incompatible with Due Process.

### A.  <u>Plaintiff Cannot Satisfy Virginia's Long-Arm Statute.</u>

In order to support this Court's exercise of jurisdiction, Plaintiff must establish that Virginia's long-arm statute has been satisfied.  Indeed, as this Court has noted, it is "well-settled that Virginia's long-arm statute must be satisfied 'even in those situations where it could plausibly be argued that a lesser standard would meet due process.'" *DeSantis v. Hafner Creations, Inc.*, 949 F.Supp. 419, 423 (E.D. Va. 1996); *see also Blue Ridge Bank v. Veribanc*, 755 F.2d 371 (4th Cir. 1985).

Here, the Plaintiff has not included sufficient allegations, much less any evidence, as necessary to demonstrate that the long-arm statute has been satisfied.  Rather, Plaintiff alleges jurisdiction in a wholly cursory and conclusory manner.   For example, in the Amended Complaint, Plaintiff merely alleges that:

> "[t]his Court has jurisdiction over Defendants . . . in that, **on information and belief**, (1) Defendants either reside[1] or regularly transact business in this District or have committed the tortious acts complained of herein within this District, which acts have caused and will cause injury to Plaintiff; (2) Defendants include aliens, who may be sued in any District; and/or (3) a substantial part of property that is the subject of the action is situated in this District."

(DE 6, ¶3) (emphasis supplied).

---

[1] The allegation that the Defendants "reside" in the District smacks of bad faith. Shortly after alleging that the Defendants "reside" in the District, Plaintiff asserts the wholly contradictory allegations that the Defendants are foreign corporations with places of business located well outside of this District and, in fact, in foreign countries well outside of any U.S. district. [DE 6, ¶¶ 6-9]  In light of Plaintiff's awareness of where the Defendants actually reside, Plaintiff simply has no good faith basis for alleging that any of the Defendants "reside" in the District.

Such an allegation, standing alone[2], is insufficient to establish that Virginia's long-arm statute has been satisfied.  Indeed, the long-arm statute does not make any reference to "aliens, who may be sued in any District."  Similarly, the "substantial part of property" allegation does not relate to any of the grounds set forth in the long-arm statute.

The only portions of Match's allegation that arguably relate to the long-arm statute are those referencing regular transaction of business in Virginia and commission of tortious acts that will cause injury in Virginia.  However, neither ground is satisfied in this case as to any of the Defendants.

As for the issue of tortious acts that will cause injury in Virginia, here, Plaintiff has alleged a series of torts predicated upon the Lanham Act, 15 U.S.C. §1051 *et seq.*, including trademark infringement.  Although it does not appear that the Fourth Circuit has weighed in on the issue, other courts have held that the injury from trademark infringement occurs in the state

---

[2]  Match's formulaic allegation, grounded upon "information and belief," rather than fact, fails to meet basic pleading standards and cannot form the basis of the court in the E.D. Va. action obtaining jurisdiction over the parties.  As detailed in Section III, *infra*, a plaintiff's obligation to plead the grounds of his entitlement to relief requires more than a formulaic recitation.  Notably, the pleading standard announced in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) applies to *all* Rule 8(a) allegations—including Rule 8(a)(1) allegations showing the grounds for the court's jurisdiction.  *Haley Paint Co. v. E.I. Dupont De Nemours and Co.*, 775 F.Supp.2d 790, 798-99 (D.Md. 2011) (concluding that "the pleading standards articulated in *Twombly* and *Iqbal* apply to Rule 8(a)(1)"); *MyKey Technology, Inc. v. TEFKAT LLC*, 2012 WL 3257655, *2 (D.Md., slip copy, Aug. 7, 2012); *Palnik v. Westlake Ent., Inc.,* 344 Fed.Appx. 249, 251 (6th Cir. 2009); *Vance's Foods, Inc. v. Special Diets Europe Ltd.*, 2012 WL 1353898, *12 (E.D. Cal.) (slip copy, Apr. 16, 2012) (allegations insufficient to subject Ms. Cotter to personal jurisdiction in California) (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009)); *Genetic Technologies Ltd. v. Interleukin Genetics Inc*., 2010 WL 3122304, *2 (W.D.Wis.) (conclusory allegation of personal jurisdiction not enough to satisfy pleading standards).  Match failed to support that formulaic jurisdictional allegation with any facts as to each party.  Nevertheless, even if given an opportunity to further amend its pleading, Plaintiff still could not overcome the undisputed evidence establishing each Defendant's lack of the necessary contacts to satisfy the Virginia long-arm statute and due process.  *See* Kamparri Decl.; Fiesta Anguilla Decl.; Elias Decl.; and Fiesta Barbados Decl., submitted concurrently herewith.

4

where the trademark owner resides. *See, e.g., Bird v. Parsons,* 289 F.3d 865, 876 (6th Cir. 2002); *Indianapolis Colts, Inc. v. Metro. Baltimore Football Club, L.P.,* 34 F.3d 410, 411 (7th Cir. 1994); *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1322 n.2 (9th Cir. 1998); *Nida v. Nida,* 118 F.Supp.2d 1223, 1228 (M.D. Fla. 2000); *JB Oxford Holdings, Inc. v. Net Trade, Inc.*, 76 F.Supp.2d 1363, 1368 (S.D. Fla. 1999). As alleged here, Plaintiff is a company organized under the laws of the state of Delaware, with its "mailing address" in Dallas, Texas.[3] (DE 6, ¶5). Thus, if there has been any injury as a result of the alleged tortious conduct, that injury is causing harm in Delaware and/or Dallas, but not in Virginia. Accordingly, Plaintiff's conclusory allegations of tortious conduct cannot satisfy the Virginia long-arm statute.

Turning to the issue of regularly transacting business in Virginia, the evidence before the Court establishes that no such business was transacted. Beyond Plaintiff's lone, conclusory allegation [DE 6, ¶3], there are no allegations establishing that either Kamparri, Fiesta Barbados or Fiesta Anguilla transacts any business in Virginia. The failure to include meaningful allegations of fact in the Amended Complaint is compounded by the Declarations filed contemporaneously with this Motion, which establish that Kamparri, Fiesta Barbados, and Fiesta Anguilla do ***not*** transact any business in Virginia. *See* Declaration of Panny Stylianou on behalf of Kamparri (hereinafter, the "Kamparri Decl."), at ¶¶4-9; Joint Declaration of Robert Bremer (managing director) and Ana Vrolijk–Neef (attorney-in-fact) for United International Trust N.V. on behalf of Fiesta Catering International, Inc. (Anguilla) (hereinafter, the "Fiesta Anguilla

---

[3] Despite Plaintiff's coy allegation that it has a "mailing address"—*as opposed to a principal place of business*—in Texas, it is undisputed that Plaintiff has not alleged a principal place of business in Virginia. Moreover, Virginia's Secretary of State's records, of which this Court may take judicial notice, show that Plaintiff's principal place of business is, in fact, located in Dallas, Texas. Fed.R.Evid. 201; *see* Exhibit "1."

Decl.") at ln.s 11-21; and Declaration of Gail Williams on behalf of Fiesta Catering International, Inc. (Barbados) (hereinafter, the "Fiesta Barbados Decl.") at ¶¶ 7-13. The evidence also establishes that none of these Defendants transact any business in the United States.   *See* Kamparri Decl., at ¶¶12; Fiesta Anguilla Decl., at ln.s 24-29; and Fiesta Barbados Decl., at ¶¶3-13.   The Declarations also establish that none of the other grounds enumerated under Virginia's long-arm statute are remotely applicable. *See* Kamparri Decl.; Fiesta Anguilla Decl.; and Fiesta Barbados Decl..

The only Defendant with any contact whatsoever with Virginia is Cytek.   However, Cytek's contacts are so minimal and entirely electronic in nature that they cannot satisfy the regularly transacting business prong of Virginia's long-arm statute.   *See* Declaration of Gregory Edward Elias of United International Trust N.V. (hereinafter, the "Elias Decl."); *ALS Scan, Inc. v. Digital Service Consultants, Inc.,* 293 F.3d 707, 715 (4th Cir. 2002) ("We are not prepared at this time to recognize that a State may obtain general jurisdiction over out-of-state persons who regularly and systematically transmit electronic signals in to the State via the Internet based solely on those transmissions.  Something more would have to be demonstrated.").  In *ALS Scan,* the Fourth Circuit affirmed the dismissal of a Georgia-based Internet Service Provider ("ISP")— whose contacts with the forum state, Maryland, were entirely electronic—on the grounds that the court could not "constitutionally exercise jurisdiction over the ISP. *Id.* at 709.  To reach this conclusion, the Fourth Circuit "adopted and adapted" the model developed in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D. Pa. 1997), and considered the nature of the Georgia ISP's contact with Maryland. *Id.* at 714.  Even though the evidence established that at least one Maryland resident purchased an "on-line" membership using a credit card, and received

6

a username and password to the website at issue, *see id.* at 710, the Fourth Circuit nonetheless concluded that the defendant's "activity was, at most, passive and therefore [did] not subject it to the judicial power of a Maryland court even though electronic signals from [the defendant's] facility were concededly received in Maryland." *Id.* at 714.  Explaining further, the Fourth Circuit opined:

> Even though electronic transmissions from maintenance of a website on the Internet may have resulted in numerous and repeated electronic connections with persons in Maryland, such transmissions do not add up to the quality of contacts necessary for a State to have jurisdiction over the person for all purposes.

*Id.* at 715.

When the Fourth Circuit's decision in *ALS Scan* is applied to the facts of this case, it is evident that Plaintiff cannot satisfy the regularly transacting business aspect of Virginia's long-arm statute based solely upon Cytek's electronic contacts with residents of Virginia. As with the defendant in *ALS Scan,* Cytek has no contacts with the forum State other than electronic contacts.[4]  *See* Elias Decl..

However, even if this Court were to find that Plaintiff has satisfied the Virginia long-arm statute vis-à-vis Cytek, a similar conclusion cannot be reached as to Kamparri, Fiesta Barbados and Fiesta Anguilla.  Absent any factual allegations establishing that Kamparri, Fiesta Barbados and Fiesta Anguilla have engaged in activity falling within the ambit of Virginia's long-arm statute, there is absolutely no basis upon which this Court could exercise jurisdiction over them.

---

[4] There is another similarity between the instant case and *ALS Scan*, namely, the passive manner in which the websites operate.  The Fourth Circuit held that the website at issue in *ALS Scan* was passive, notwithstanding that it was a subscription-based service. Under that rationale, the websites that Cytek's contractors operate for Cytek are also passive.

### B. <u>Plaintiff Cannot Satisfy Due Process.</u>

The failings of Plaintiff's Amended Complaint do not end with its failure to satisfy the Virginia long-arm statute. In addition, Plaintiff is unable to sustain its burden to show that this Court's exercise of jurisdiction comports with Due Process.[5] Even if Plaintiff could establish that the Defendants' conduct falls within the scope of Virginia's long-arm statute, Plaintiff would still bear the burden of establishing that an exercise of personal jurisdiction comports with "fair play[6] and substantial justice." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985), *citing, International Shoe Co. v. Washington,* 326 U.S. 310, 320 (1945). When determining whether Due Process considerations are satisfied, "a court properly focuses on 'the relationship among the defendant, the forum, and the litigation." *Calder v. Jones,* 465 U.S. 783, 788 (1984), *quoting, Shaffer v. Heitner,* 433 U.S. 186, 204 (1977).

Here, three of the Defendants—Kamparri, Fiesta Barbados and Fiesta Anguilla—have absolutely no relationship with the forum whatsoever. They do not transact business in Virginia,

---

[5] The nature of contacts that must be demonstrated to support an exercise of jurisdiction differ between general jurisdiction and specific jurisdiction. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 413-15 nn. 8-9 (1984). "When, as in the case at bar, a suit does not arise out of the defendant's activities in the forum state, the court must exercise 'general jurisdiction' and the requisite 'minimum contacts' between the defendant and the forum state are 'fairly extensive.'" *Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1199 (4th Cir. 1993), *quoting Ratliff v. Cooper Laboratories, Inc.,* 444 F.2d 745, 748 (4th Cir.) (quotation omitted), *cert. denied,* 404 U.S. 948, 92 S.Ct. 271, 30 L.Ed.2d 265 (1971). However, "[i]f the defendant's contacts with the State are also the basis for the suit, those contacts may establish specific jurisdiction." *ALS Scan,* 293 F.3d at 712. Since neither Kamparri, Fiesta Barbados, nor Fiesta Anguilla has **<u>any</u>** contacts with Virginia, the result under either a specific jurisdiction or general jurisdiction approach is the same: there is no way that Plaintiff can justify an exercise of jurisdiction over the Defendants that comports with Due Process.

[6] Plaintiff brought this action in this District solely because Verisign, Inc., the top-level (.com) domain registry, is located here, and Plaintiff sought to proceed on an *in rem* basis against only the domain names. *See* DE 6, at ¶¶ 4, 12-13. However, now that it has become plain that Match cannot proceed *in rem* (*see* Section IV, *infra*), there is no fair basis to proceed in Virginia.

have no other contacts with the forum [*see* Kamparri Decl., ¶¶4-10; Fiesta Anguilla Decl., ln.s 8-23; and Fiesta Barbados Decl., ¶¶3-13, and as detailed above, the "effects" of any alleged trademark infringement would necessarily be felt in Texas or Delaware, not Virginia. Thus, even if this Court were to overlook Plaintiff's failure to identify how each of these entities has satisfied the Virginia long-arm statute (*which it should not*), there is no way that Plaintiff can show that an exercise of jurisdiction by this Court over the entities would comport with Constitutional requirements.  Thus, Due Process considerations mandate that this Court dismiss Kamparri, Fiesta Barbados, and Fiesta Anguilla.

With regard to Cytek, the Fourth Circuit's decision in *ALS Scan* is again instructive. In *ALS Scan,* it was noted that Maryland's long-arm statute is "coterminous with the limits of the Due Process clause," and thus, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *ALS Scan,* 293 F.3d at 710.  Nonetheless, the Fourth Circuit affirmed the dismissal, agreeing with the District Court that defendant's conduct did not justify an exercise of jurisdiction based upon general or specific jurisdiction.  *Id.,* at 715.  Moreover, in *ALS Scan,* the Fourth Circuit made clear that it was not prepared to hold that general jurisdiction could be established solely through electronic contacts.  *Id.* Since Cytek's only contacts with Virginia are electronic—allowing people in Virginia to subscribe to Cytek's websites—binding precedent does not support an exercise of jurisdiction.

In sum, there is simply no way that Plaintiff can establish that the Defendants should have "reasonably anticipated being haled into court" in Virginia on trademark infringement claims made by a party incorporated in Delaware, much less a party whose principal place of

business is located in Dallas, Texas.[7] *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).  Thus, this Court should dismiss the action for lack of jurisdiction.

### III.   PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Dismissal is appropriate under Fed.R.Civ.P. 12(b)(6) where, based upon a dispositive issue of law, the factual allegations of the complaint cannot support the asserted cause of action. *Nietzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827 (1989).  Plaintiff must set forth a prima facie case "and enough data must be pleaded so that each element of the alleged claim can be properly identified." *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp.*, 711 F.2d 989, 995 (11th Cir. 1983).

Although pleading requirements are substantially aimed at assuring that a defendant is given adequate notice of the nature of a claim being made against him, "they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  Thus, the pleading requirements in the Federal Rules of Civil Procedure also reveal the countervailing policy that: "plaintiffs may proceed into the litigation process only when their complaints are justified by both law and fact." *Id.* at 193.

Accordingly, a court should not ignore facts plaintiff alleged that undermine the cause of action.  *Goerlich v. Davis*, 1991 WL 195772, *1 (N.D.Ill.).  A claim need not be obviously unsupportable or based on an outlandish legal theory in order to be dismissed. *Nietzke*, 490 U.S. at 328, ("Nothing in Rule 12(b)(6) confines its sweeps to claims of law that are obviously

---

[7] Indeed, it appears that the only connection between Plaintiff, the alleged cause of action, and the state of Virginia is the fact that Plaintiff's counsel is located *near* Virginia.  Considering that Plaintiff's counsel has offices in New York, Washington, D.C. and Palo Alto, it is perhaps unsurprising that Plaintiff would present an untenable case for jurisdiction in Virginia rather than bring the action in Texas or Delaware, which would clearly be less convenient for Plaintiff's counsel.

insupportable."). Thus, a court may dismiss a claim even where it presents "a close but ultimately unavailing" legal theory. *Id.* Moreover, conclusory allegations, legal conclusions, opinions, characterizations, speculation and argument cannot establish a plausible claim and, thus, cannot prevent the grant of a motion to dismiss. *Glassman v. Arlington County, VA*, 628 F.3d 140, 145-146 (4th Cir. 2010) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *Francis*, 588 F.3d at 193 (Rule 8 "'does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009)); *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2nd Cir. 2002); *Quality Foods*, 711 F.2d at 995; *see Carpenter v. County School Bd., Fairfax County*, 107 Fed.Appx. 351 (4th Cir. 2004) (per curiam) ("The court properly requested of Carpenter facts supporting the complaint's conclusory allegations").

Instead, as the United States Supreme Court explained in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007), under Fed.R.Civ.P. 8(a), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . .Factual allegations must be enough to raise a right to relief above the speculative level. . ." *Twombly*, 127 S.Ct. at 1964-65. While a plaintiff is generally not required to set out *in detail* the facts upon which its claim is based, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 1965, n. 3. The plaintiff must state a claim that is plausible, not merely possible. *Id.* at 1965-66. Naked assertions without some further factual enhancement stop short of the line between possibility and plausibility of entitlement to relief. *Id.* at 1966; *see Ashcroft v. Iqbal*, 556 U.S. 662, at 678-79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

## A.  Plaintiff Fails to State a Claim for Counterfeiting

In both Count I and Count II, Match makes the naked, conclusory allegation that Defendants are using a "counterfeit mark." [DE 6, ¶¶ 25, 28, 36]  However, Match entirely fails to assert any facts that would make its purported right to relief probable.  Indeed, Plaintiff's own allegations are contrary to a claim of counterfeiting.

The Lanham Act provides two definitions that establish what Match was required to plead to establish its claim of counterfeiting.  Under the Act, the word "counterfeit" is defined to mean: "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. §1127.  Additionally, the Act defines the term "counterfeit mark" to mean: "a counterfeit of a mark that is registered on the principal registered…for such goods or services sold, offered for sale, or distributed and that is in use. . ." 15 U.S.C. §1116(d)(1)(B)(i).[8]  Together, these definitions plainly establish that, to state a claim for counterfeiting, a plaintiff must show that the defendant is using a mark that is: (1) identical with or substantially indistinguishable; (2) from a registered mark; (3) for the sale or offering of the same goods or services.  15 U.S.C. §1116(d)(1)(B)(i); 15 U.S.C. §1127; see Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC, 507 F.3d 252, 269 (4th Cir. 2007) ("Chewy Vuiton" for dog toys not substantially indistinguishable from "Louis Vuitton" for handbags).

Here, Match's allegations and exhibits show that the parties' respective marks are not "identical or substantially indistinguishable."  Indeed, Match alleges that only a "portion" of the Defendants' website names are merely "similar" to Plaintiff's mark.  DE 6, at ¶21.  Match bases that alleged "similarity" in part on the alleged use of a "font and style" similar to its own. Id.

---

[8] Subparagraph (ii) applies only to marks protected by the "Ted Stevens Olympic and Amateur Sports Act." 15 U.S.C. §1116(d)(1)(B)(ii) and 36 U.S.C. §220501-506.

However, as clearly shown in Plaintiff's registration of its Match.com® mark, its mark is for a typed drawing and does not encompass the particular font it is depicting in Paragraph 21. *Compare* DE 6, ¶21 *with* DE 6-1, p. 2.  Under the plain definition of a counterfeit, there cannot be a counterfeit of unregistered matter.   Moreover, even the USPTO did not consider EROTICMATCH® to be substantially indistinguishable from Plaintiff's mark, as is plain from the fact that the USPTO issued Registration no. 4,105,390 to Fiesta Anguilla for its mark.[9] Likewise, the USPTO approved the application for registration of XXXMATCH.COM and passed it on for publication, plainly indicating that it was not substantially indistinguishable from Plaintiff's mark.

Additionally, each of Plaintiff's Registered Match.Com® Marks[10] is registered for: "Computer services, namely, providing information regarding, and in the nature of, on-line dating and introduction services." DE 6, ¶15 and Ex. A(1)-(3).  Match also describes its online dating services as a "relationship, singles and personals service."  *Id.*, at ¶¶ 14-15.

In contrast, Match alleges that Defendants' offer "online 'adult dating'."  *Id.* at ¶19. To further describe Defendants' adult dating services, Match attached its Exhibits E and F. DE 6-7, 6-8. Therein, it is clearly shown that Defendants' alleged services are not relationship services, or even singles services.  Instead, they are for members—including couples—"looking for sex," not relationships.  *See* DE 6-7, 6-8.  Thus, it is quite *im*probable, that the audience and services are the same.  Even if they could somehow be perceived as the same service and as targeting the same consumers, Match failed to allege how.

---

[9]   The Court may take judicial notice of this Registration on the publicly available and reliable Principal Register of the USPTO.  Fed.R.Evid. 201; Exhibit "2"; *see* www.uspto.gov

[10]   Plaintiff defines the term "Registered Match.Com® Marks" at DE 6, ¶15 and Ex.s A(1)-(3).

13

In sum, Match's allegations are contrary to and cannot establish that the parties' marks are substantially indistinguishable and used to offer the same services.  Therefore, based on this dispositive issue of law, this Court should dismiss Plaintiff's claims of counterfeiting in Counts I and II of the Amended Complaint with prejudice.

**B.  Plaintiff's Failure to Distinguish Between the Defendants is Fatal to It's Attempt to Meet the *Twombly* Pleading Standard**

More pervasive than Match's fatally flawed claim of counterfeiting, is Plaintiff's failure to provide any notice of each individual Defendant's conduct and how such conduct subjects them to liability on each of the three counts.  Plaintiff has taken four parties and essentially compressed them into one.  Perhaps Match did so for its own convenience because it knows that it cannot separately state a claim against each Defendant.  Or, perhaps Match did so because it does not know who has done what, if anything.  Either way, Match cannot vaguely refer to the Defendants in mass, fail to state facts as to their respective conduct, and somehow state a claim against each Defendant individually.[11]

---

[11]  Plaintiff has similarly failed to distinguish between its claims. When a plaintiff incorporates by reference every antecedent allegation into each count, it renders the complaint incomprehensible and makes it impossible for defendants to determine who is supposed to have done what with respect to each count.  *Byrne v. Nezhat*, 261 F.3d 1075, 1129 (11th Cir. 2001); *Sewraz v. Morchower*, 2009 WL 211578, *1 (E.D. Va. Jan. 28, 2009) ("overly inclusive allegations make it difficult to determine which facts support which cause of action."); *see* Fed.R.Civ.P. 10(b) (requiring that "[e]ach claim founded upon a separate transaction or occurrence…shall be separated in a separate count…whenever a separation facilitates the clear presentation of the matters set forth").  Thus, a plaintiffs' failure to identify its claims with sufficient clarity is improper and constitutes a "shotgun" pleading that may be dismissed. *Beckwith v. BellSouth Telecomm. Inc.*, 146 Fed.Appx. 368, 371, 2005 WL 2012667 (11th Cir. 2005) (courts and defendants are not required to sift through the facts and decide for themselves which are material to the particular cause of action asserted); *Sewraz*, 2009 WL 211578, *1 ("[s]uch pleadings require the court to engage in constant cross-referencing to locate relevant allegations.").  Here, Plaintiff engaged in shotgun pleading [DE 6, ¶¶32, 40] and, thus, this Court should dismiss Plaintiff's Amended Complaint pursuant to Rules 8(a) and 10(b).

14

This is especially so because, from the very opening of its Amended Complaint, Match concedes that, while its allegations are "upon knowledge as to its *own* acts and circumstances," they are merely based on "information and belief as to the acts or circumstances *of others*." DE 6, at pp. 1-2 (emphasis added).  Thus, there can be no doubt that what Plaintiff has set forth in its Amended Complaint are merely undifferentiated, conclusory allegations, opinions, characterizations, speculation and argument as to the Defendants' conduct.

Match generally lumped all the Defendants together.  For example, Match opined that all of the "Defendants offer online 'adult dating' services. . ." and that all of the Defendants designed the subject websites "to make consumers believe mistakenly" that an association with Match.Com® existed  DE 6, ¶19-20.  However, one of Match's later allegations plainly shows that Match is aware of the parties' separate roles as to ownership of the Subject Domains, ownership of the trademarks, and operation of the websites.  *Id*. at ¶24.  Thus, the lumping together of Defendants was an improper shortcut, and does nothing to define the issues for trial or to show that its claims are justified by both law and fact. [12]

Plaintiff is obligated to provide the grounds for its entitlement to relief as to each Defendant against which it is seeking to recover.  *See* Fed.R.Civ.P. 8; *Twombly*, 127 S.Ct. at 1964-65.  However, because Match failed to state facts as to each individual Defendant's

---

[12] Where a plaintiff fails to allege the separate acts and counts attributable to each defendant in separate paragraphs and counts but rather attributes conduct to the "defendants" collectively and without specificity, the complaint is also defective. *Veltmann v. Walpole Pharmacy, Inc.,* 928 F.Supp. 1161, 1163-64 (M.D. Fla. 1996); *Gen-Probe, Inc. v. Amoco Corp*., 926 F.Supp. 948, 962 (S.D. Cal. 1996) (pursuant to FRCP 10(b) "Each count should distinguish and identify which allegations relate to which claims, and which defendants.").

conduct, it has failed to meet that obligation.  Therefore, this Court should dismiss the Amended

Complete for failure to state a claim against any particular defendant.[13]

### C.  <u>Plaintiff Fails to State a Claim for Contributory Infringement</u>

Similar to Plaintiff's other allegations against the Defendants in mass, Match also

vaguely attempts to assert a claim for contributory infringement against certain unspecified

Defendants.  Indeed, in Paragraph 24 of the Amended Complaint, Match alleges—*on mere

information and belief*—that the Defendants "either induced, caused, or materially contributed to

[the unlawful activity], or ratified and adopted the unlawful acts, thus making them all either

directly or secondarily liable.  DE 6, ¶24.  However, Match's random, unsupported allegations

do nothing to define the probable issues for trial or to show that its claims are justified by both

law and fact.  Indeed, one can get no idea of who, if anyone, is directly liable and who is

secondarily liable.  *See* DE 6, ¶24.  It appears that Match merely threw key terms up on the wall

to see what may stick toward establishing a claim for direct and secondary liability.

However, to state a claim for contributory infringement (*i.e.*, secondary liability), a

plaintiff must establish that the accused: (1) intentionally induced another to infringe a

trademark; or (2) continued to supply a product to one whom it knew or had reason to know was

engaging in trademark infringement.  *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456

U.S. 844, 854 (1982); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 983 (9th

Cir. 1999); *Size, Inc. v. Network Solutions, Inc.*, 255 F.Supp.2d 568, 572 (E.D.Va. 2003).

Here, Plaintiff has failed to allege facts establishing that it is probable that any particular

Defendant has intentionally induced another to infringe Match's trademark, or has supplied a

---

[13] Alternatively, this Court "has discretion to treat vague pleadings under Rule 12(e) and order Plaintiff to provide a more definite statement." *Dodge v. CDW Gov't, Inc.*, 2009 WL 1605010, *3 (E.D.Va.).

product to another whom it knew or had reason to know was infringing Match's trademark.[14]

Therefore, this Court should dismiss the claims for contributory infringement (secondary liability) that Match has attempted to set forth in the Amended Complaint.

### IV. ALLEGATIONS OF IN REM JURISDICTION MUST BE STRICKEN AND THE DOMAIN NAMES SHOULD BE DROPPED AS NAMED PARTIES.

Finally, in order to correct the pleadings and avoid a confusion of the issues, this Court should strike certain immaterial and impertinent allegations pursuant to Rule 12(f),[15] and drop the domain names as parties to this action pursuant to Rule 21.[16] Specifically, in Paragraph 4 of the Amended Complaint, Match alleges that: "This Court in the alternative has *in rem* jurisdiction over the Subject Domain Names pursuant to 15 U.S.C. § 1125(d)(2)[17] in that the registry or other authority for domain names with the .com extension is located within this District." [DE 6, ¶4]  In support of that allegation, Match further alleges, in Paragraphs 12 and 13, that: "The top-level .com domain registry is operated by third party Verisign, Inc., which is headquartered in this District."  [DE 6, ¶¶ 12, 13].  Those allegations have no other purpose but

---

[14] Only in Paragraphs 10 and 11 of the Amended Complaint does the Plaintiff direct its allegations of inducing, causing, materially contributing, ratifying and adopting the unlawful acts toward any individual Defendants.  However, those Paragraphs are expressly aimed at only David Rickham and John Does 1-4, none of whom have ever been served with process and, therefore, *are not parties* to this action. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc*., 526 U.S. 344, 350 (1999) ("one becomes a party "only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend."); *U.S. ex rel. Asphalt Roads and Materials Co., Inc. v. Western Ins. Co*., 2012 WL 2930693, *2 (E.D.Va.) (slip copy).

[15] Pursuant to Rule 12(f), the court may strike from a pleading any immaterial, impertinent matter. Fed.R.Civ.P. 12(f).

[16] Pursuant to Rule 21, the court may, on just terms, drop a party.  Fed.R.Civ.P. 21.

[17] 15 U.S.C. §1125(d) is known as the "Anti-Cybersquatting Consumer Protection Act."  Pub. L. No. 106-113, 113 Stat. 1501A-545 (1999).

to show that this Court is the appropriate forum in which to bring an *in rem* proceeding directly against the domain names xxxmatch.com and eroticmatch.com (the "Subject Domains").

However, as shown below, there are no circumstances under which Plaintiff may obtain *in rem* jurisdiction over the Subject Domains. Therefore, Defendants respectfully request that, pursuant to Rule 12(f), this Court strike Paragraph 4 and the aforementioned portions of Paragraphs 12 and 13 from the Amended Complaint, because they are immaterial and impertinent to this action. Similarly, because there can be no *in rem* jurisdiction over the Subject Domains, the Defendants respectfully request that, pursuant to Rule 21, the Court order that the Subject Domains be dropped as named parties[18] to this action.

The specific requirements that a plaintiff must meet in order to proceed directly against a domain name, rather than its user or registrant, are set forth in the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. §1125(d), which provides in pertinent part, that:

> The owner of a trademark may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located *if*—
>
> (i)     the domain name violates any right of the owner of a mark. . .; *and*
>
> (ii)    the court *finds* that the owner—
>
>> (I)     is not able to obtain in personam jurisdiction over a person who would have been a defendant under paragraph (1);[19] or
>>
>> (II)    through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1). . .

15 U.S.C. §1125(d)(2)(A) (emphasis added); *see Porsche Cars N. Amer., Inc. v. Porsche.net, et al.*, 302 F.3d 248, 259-60 (4th Cir. 2002) (finding that the requirements apply whether or not the

---

[18]  Although, the domain names may not formally be "parties."  *See* cases at n. 14.

[19]  Paragraph 1 of 15 U.S.C. §1125(d) provides for an action against a person who registers, traffics in, or uses a domain name while having a bad faith intent to profit from a protected mark. *See* 15 U.S.C. §1125(d)(1).

defendant formally opposes the court's assertion of *in rem* jurisdiction).  Thus, the face of the statute itself makes plain that if personal jurisdiction is available over any person against whom Plaintiff could have brought suit, then *in rem* jurisdiction is improper and unavailable.  *Graham & Buffet, Ltd. v. www.vilcabamba.com*, 2006 WL 851253, *2 (W.D.Wash.) (finding that if personal jurisdiction can be exercised in that court or in another district court, then the *in rem* action must be dismissed).

Indeed, if the alleged infringer resides, does business in, or is *otherwise present* in, any judicial district of the United States, then the inquiry ends and the trademark owner must proceed only with an *in personam* action.  *Id.*  Moreover, if the *in rem* proceeding is dismissed, the domain name is no longer a party and, thus, the registrar's location is no longer pertinent. *Id.,* at *5 (reevaluating venue after the court determined *in rem* jurisdiction was improper).

Here, Kamparri, Cytek and Fiesta Anguilla have clearly shown that personal jurisdiction can be exercised in another district court.  Indeed, on October 1, 2012, Defendants voluntarily submitted themselves to the jurisdiction of the U.S. District Court for the Southern District of Florida by filing case no. 1:12-cv-23573-DLG for declaratory relief.[20]  *See* Kamparri Decl., at ¶ 12(b); Fiesta Anguilla Decl., at ln.s 27-29; and Elias Decl., at ¶ 15.

Moreover, Match's own conduct shows that even it does not believe that it could obtain in rem jurisdiction.  Indeed, Match never moved this Court to make any of the findings required by 15 U.S.C. §1125(d)(2)(A) to establish *in rem* jurisdiction.  Instead, Match's only requests to this Court have been directed toward seeking a default against Fiesta Barbados [DE 12] and achieving service of process upon Kamparri, Cytek and Fiesta Anguilla [DE 19], which were

---

[20]  At that time, Match had not taken any action before this Court since filing its Amended Complaint (DE 6) on April 6, 2012.

19

both resolved through agreement. DE 33-34.

In sum, because there can be no doubt that Kamparri (the registrant) and Cytek (the user of the Subject Domains) have been present in a U.S. district court in relation to this dispute and, thus, Match cannot proceed *in rem* directly against the Subject Domains, this Court should dismiss the *in rem* proceeding, strike Paragraph 4 and the stated portions of Paragraphs 12 and 13 of the Amended Complaint, and drop the Subject Domains as named parties to this action.

### V.      CONCLUSION

In light of the foregoing, Defendants respectfully request that this Court dismiss this action with prejudice for lack of personal jurisdiction over each of them and to prevent Defendants from being haled into a court with which they have not had the required minimum contacts to answer an unsupported, incomprehensible and redundant set of claims.  However, should this Court decide not to dismiss this action in its entirety for lack of personal jurisdiction, then Defendants request that the Court: strike the allegations of an *in rem* basis for jurisdiction; drop the domain names as parties; dismiss the Complaint for failure to state a claim upon which relief may be granted or order Plaintiff to provide a more definite statement to make its current set of unsupported, undifferentiated, and vague claims comprehensible.


Dated: December 21, 2012             Respectfully submitted,

                                     By: /s *Thomas Murphy*
                                     Thomas Murphy / Va. Bar no. 44386
                                     e-mail:  tmurphy@dclawfirm.com
                                     Robert E. Greenberg
                                     e-mail: rgreenberg@dclawfirm.com

**FRIEDLANDER MISLER, PLLC**
5335 Wisconsin Avenue, NW
Suite 600
Washington, DC 20015
Telephone:  (202) 872-0800
Facsimile:   (202) 857-8343

*Local counsel on behalf of:*

**FELDMAN GALE, P.A.**
Jeffrey D. Feldman / *admitted pro hac vice*
e-mail: jfeldman@feldmangale.com
Susan J. Latham / *admitted pro hac vice*
e-mail: slatham@feldmangale.com
One Biscayne Tower, 30th Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone:  (305) 358-5001
Facsimile:   (305) 358-3309
*Counsel for Defendants: Cytek, Ltd., Fiesta*
*International, Inc. (Barbados), Fiesta Catering*
*International, Inc. (Anguilla), and Kamparri*
*Trading Limited.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this day, December 21, 2012, the foregoing document(s) was filed through the ECF system and is being served on all counsel of record or pro se parties in this matter who are identified on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

_/s  *Thomas Murphy*_____

Thomas Murphy

## SERVICE LIST

Edward T. Colbert
William B. Merone (Va. Bar no.38861 )
Erik C. Kane (Va. Bar no. 68294)
**KENYON & KENYON, L.L.P.**
*Counsel for Match.Com, L.L.C.*
1500 K Street, N.W.
Washington, DC 20005
Telephone: 202-220-4200
Facsimile:  202-220-4201