**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| MATCH.COM, L.L.C. | |
| *Plaintiff*, | |
| v. | |
| FIESTA CATERING INTERNATIONAL, INC. (BARBADOS); FIESTA CATERING INTERNATIONAL, INC. (ANGUILLA); CYTEK LIMITED; KAMPARRI TRADING LTD; DAVID N. RICKHAM (an individual); and JOHN DOES 1-4 (individuals not yet identified) | Civil Action No.: 1:12cv363 AJT (IDD) |
| *Defendants* | |
| and | |
| XXXMATCH.COM and EROTICMATCH.COM | |
| *Domain Names (in rem).* | |

**OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

**OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

**OPPOSITION TO MOTION TO STRIKE *IN REM* ALLEGATIONS**

## TABLE OF CONTENTS

**Page**

BACKGROUND ......................................................................................................... 2

ARGUMENT .............................................................................................................. 3

    A.    Personal Jurisdiction May Properly be Exercised Over the Moving Defendants .............................................................................................. 3

        1.    Cytek is Transacting Significant Business in Virginia ............................ 4

        2.    The Two Fiesta Entities Have the Authority to Control Cytek's Actions ................................................................................................. 6

        3.    Kamparri is Transacting Business in Virginia Through an Agent ........... 10

        4.    Discovery Would Likely Confirm the Existence of Personal Jurisdiction ........................................................................................... 12

    B.    The Complaint States Proper Claims for Counterfeiting and Infringement ........ 13

        1.    The Amended Complaint States a Proper Claim for Counterfeiting ....... 14

        2.    The Amended Complaint Sufficiently Differentiates Among the Parties .................................................................................................. 17

        3.    The Amended Complaint States a Proper Claim for Secondary Liability ................................................................................................ 18

    C.    The In Rem Claims May Proceed if Personal Jurisdiction Over Kamparri is Lacking .............................................................................................. 19

    21

CONCLUSION ........................................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**

*Aitken v. Comm'ns Workers of Am.*, 496 F. Supp. 2d 653 (E.D. Va. 2007)....................................6

*Akeva L.L.C. v. Mizuno Corp.*, 199 F. Supp. 2d 336 (M.D.N.C. 2002)..........................................8

*Allstate Ins. Co. v. Cherry*, 2012 WL 1425158 (D. Md. 2012) .....................................................3

*Battenfeld of America Holding Co. v. Baird, Kurtz & Dobson*, 45 F. Supp. 2d 1109 (D. Kan. 1999)...........................................................................................................................................9

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed..............................................8

*Bright Imperial Ltd. v. RT MediaSolutions, S.R.O.*, 2012 WL 1831536 (E.D. Va. 2012) .........5, 6

*Chanel, Inc. v. Banks*, 2011 WL 121700 (D. Md. 2011) ..............................................................14

*Cole v. Tobacco Inst.*, 47 F. Supp. 2d 812 (E.D. Tex. 1999).......................................................10

*Combs v. Bakker,* 886 F.2d 673 (4th Cir. 1989) .....................................................................4, 12

*Compagnie des Bauxites de Guinee v. L'Union,* 723 F.2d 357 (3rd Cir. 1983)............................13

*Denenberg v. Led Techs., LLC*, 2010 WL 3582994 (D. Neb. 2010) ...........................................18

*Enterprise Intern. v. Corporacion Estatal Petrolera,* 762 F.2d 464 (5th Cir. 1985)....................13

*Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259 (9th Cir. 1996) ...........................................18

*Francisco v. Verizon South, Inc.*, 2010 WL 2990159 (E.D. Va. 2010) .......................................20

*Fred Hutchinson Cancer Research Center v. BioPet Vet Lab, Inc.*, 2011 WL 2551002 (E.D. Va. 2011)........................................................................................................................................20

*Government Employees Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700 (E.D. Va. 2004). ............19

*Hanamint Corp. v. Alliant Mktg. Grp., LLC*, 481 F. Supp. 2d 444 (M.D.N.C. 2007).................18

*Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844 (1982)........................................................18

*J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011) .................................................8

*Jones v. Frazier*, 2009 WL 2601355 (E.D. Va. 2009)...................................................................4

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252 (4th Cir. 2007).............15

*McLaughlin v. McPhail,* 707 F.2d 800 (4th Cir. 1983) ................................................................ 13

*Mitrano v. Hawes,* 377 F.3d 402 (4th Cir. 2004) ........................................................................... 4

*Mrs. U.S. Nat. Pageant, Inc. v. Miss U.S. Organization, LLC,* 2012 WL 2870218 (W.D.N.Y. 2012) ............................................................................................................................................. 6

*Oakley, Inc. v. Jofa AB,* 287 F. Supp. 2d 1111 (C.D. Cal. 2003) .................................................. 9

*Rich v. KIS California, Inc.,* 121 F.R.D. 254 (M.D.N.C. 1988) ................................................... 13

*Size, Inc. v. Network Solutions, Inc.,* 255 F. Supp. 2d 568 (E.D. Va. 2003) ................................ 18

*SoftView LLC v. Apple Inc.,* 2012 WL 3061027 (D. Del. 2012) .................................................. 19

*South Carolina State Ports Auth. v. Silver Anchor, S.A., (Panama),* 23 F.3d 842 (4th Cir. 1994) 18

*Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.,* 220 F. Supp. 2d 289 (S.D.N.Y. 2002) ............................................................................................................................................. 7

*United States v. Chong Lam,* 677 F.3d 190 (4th Cir. 2012) ................................................. 15, 16

*United States v. Guerra,* 293 F.3d 1279 (11th Cir. 2002) .......................................................... 15

*Waste Mgmt. Holdings, Inc. v. Gilmore,* 252 F.3d 316 (4th Cir. 2001) ....................................... 20

**Statutes**
15 U.S.C. §1055 ............................................................................................................................. 7

15 U.S.C. §1072 ............................................................................................................................. 6

15 U.S.C. §1114(1) ...................................................................................................................... 14

15 U.S.C. §1115(b) ......................................................................................................................... 6

15 U.S.C. §1116(d) ...................................................................................................................... 14

15 U.S.C. §1125(a) ...................................................................................................................... 21

15 U.S.C. §1125(d) ...................................................................................................................... 21

15 U.S.C. §1125(d)(2)(A) .................................................................................................. 1, 20, 21

15 U.S.C. §1127 ........................................................................................................................... 14

Va. Code Ann. § 8.01-328.1 .......................................................................................................... 4

**Other Authorities**
"Joint Statement on Trademark Counterfeiting Legislation," 130 Cong. Reg. 31,675 (1984)) ... 15

**Rules**

Fed. R. Civ. P. 12(f) ................................................................................................................ 20

Fed. R. Civ. P. 4(k)(1) ...................................................................................................... 12, 13, 21

**Treatises**

4 J. Moore, J. Lucas & G. Grother, *Moore's Federal Practice,* § 26.56(6) (2d ed. 1987) .......... 13

4 Wright and Miller, *Federal Practice and Procedure* §1067.6 (3d ed.2002) ............................. 3

5C Wright & Miller § 1380 (3d ed. 2004) ................................................................................ 20

**Regulations**

*TMEP*, §807.14(e)(ii) ............................................................................................................... 15

*Trademark Manual of Examining Procedure* ("*TMEP*"), §1201.03(f) (Oct. 2012 ed.) ................ 6

Plaintiff, Match.com, L.L.C., hereby responds to three motions (D.I. 36, 37, 38) jointly filed by Defendants Fiesta Catering International, Inc. (Barbados); Fiesta Catering International, Inc. (Anguilla); Kamparri Trading Ltd.; and Cytek Limited (collectively, "Moving Defendants"). Through those motions, Moving Defendants, who first tried to avoid service of process (*see generally* D.I. 19) and then attempted to hijack this case to Florida (through a declaratory judgment action that has now been dismissed), *see Declaration of Erik Kane* ("*Kane Decl.*"), Exs. 1, 2, are continuing their quest to avoid answering in this Court for their infringing actions. Their argument this time is that personal jurisdiction over them is somehow lacking even though their infringing websites have more than eight *thousand* paying subscribers within the Commonwealth and are specifically designed to target and attract new Virginia customers.

Moving Defendants' motions lack merit and should be denied.  Even without the benefit of discovery (which nonetheless is being requested in the alternative), Match.com can point to more than enough evidence to establish jurisdiction over the parties, and Defendants' claim that the pleadings are insufficient to establish claims of counterfeiting and secondary liability is legally baseless.  The only portion of Defendants' motion with any credence is the implied contention that if this Court exercises personal jurisdiction over Kamparri Trading (the domain name owner), the *in rem* allegations become superfluous, which is why Match.com presented that claim in the *alternative*.  *See* D.I. 6, ¶4; *see also* 15 U.S.C. §1125(d)(2)(A).  On the other hand, Defendants' claim that the *in rem* allegations should be dismissed irrespective of how the Court rules on jurisdiction is wrong; at the end of the day, this case should be heard here.

**BACKGROUND**

This case arises from Moving Defendants' concerted efforts to confuse consumers into believing that their morally-scandalous dating services are somehow connected with Match.com's famous MATCH.COM® dating site.  To that end, Defendants are not only offering their services using trademarks that wholly incorporate (and highlight) the "MATCH.COM" name, they are doing so using logos that were designed to *look like* they are associated with Match.com and the MATCH.COM® service.  *See generally* D.I. 6, ¶¶ 21-22.  For that reason, Match.com has not only challenged Defendants at the U.S. Trademark Office, it has brought the instant suit, which alleges both infringement and cyberpiracy under federal law.  *See id.*, ¶¶ 25-44.  Match.com filed its complaint in this case in April 2012.  *See id.*, p. 1.

Defendants know that their pornographic "MATCH.COM" services amount to morally and legally reprehensible activities, which is why their principles have set up a web of supposed foreign "owners" in an effort to avoid liability.  For example, the owner of the trademark application for XXXMATCH.COM was originally Fiesta (Barbados), whereas the owner of the EROTICMATCH trademark filing was Fiesta (Anguilla), even though non-movant Defendant David Rickham (who is believed to be a U.S. resident) is a "director" of both entities, and both entities were represented by the same U.S. trademark counsel during prosecution and other proceedings before the Trademark Office.  *See Kane Decl.*, Exs. 3-4.  Meanwhile, the "operator" for the companies' websites is allegedly Cytek (another Anguillan company), the specific activities of which Fiesta (Anguilla) claims "no knowledge," *see* D.I. 35-4, even though both companies profess to have their "primary place of business" in the same small, single-story building in Anguilla, which also happens to house the "Anguilla Caribbean Lottery" and several other enterprises.  *See Kane Decl.*, Exs. 5-12.  And as it turns out, the domain name *owner* is a

Cypriot company (Kamparri Trading) with a stated place of business (*see* D.I. 35-1, ¶2) that, at least according to the Supreme Court of Cyprus, does not actually exist. *See Kane Decl.*, Ex. 13.

This is not a case involving true "foreign" parties. Match.com respectfully submits that the evidence will show that the foreign defendants are mere shells, set up by same group of individuals in this country in a concerted effort to shield themselves from legal liability (and possibly to facilitate money transfers). (Indeed, it is telling that all of the "foreign" defendants are clamoring to have this case heard in Florida, *see, e.g.,* D.I. 35 ("*Defs. Br.*"), p. 19; D.I. 35-1, ¶12; D.I. 35-3, ¶15; D.I. 35-4, lines 24-29, a state with no stated ties to any party, but where Defendant David Rickham once resided. *See Kane Decl.*, Ex. 14). Nonetheless, even if one were to take most of Defendants' allegations at face value (which, of course, is not the operative test), the evidence accessible to Match.com at just this very early stage of the case establishes that this Court can (and should) exercise jurisdiction over all of the Moving Defendants as well as allow Match.com's counterfeiting and infringement claims to go forward.

## ARGUMENT

### A.      Personal Jurisdiction May Properly be Exercised Over the Moving Defendants

It is a misnomer to suggest (as Defendants have done; *see Defs. Br.*, pp. 1, 3-5) that the facts supporting the exercise of personal jurisdiction must be specifically pled under Rule 8(a). *See* 4 Wright and Miller, *Federal Practice and Procedure* §1067.6 (3d ed.2002) (collecting cases). Rather, when a defendant moves to dismiss for lack of personal jurisdiction, the court will look not only at the facts alleged in the complaint, but will also consider any "affidavits and other exhibits" submitted during briefing. *See Allstate Ins. Co. v. Cherry*, 2012 WL 1425158, *1, n.4 (D. Md. 2012). Also, the burden on the plaintiff "is simply to make a *prima facie*

showing of a sufficient jurisdictional basis to survive the jurisdictional challenge," and the court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989); *see also Mitrano v. Hawes,* 377 F.3d 402, 406 (4th Cir. 2004). It is against that backdrop that Defendants' motion is to be measured.

### 1.      Cytek is Transacting Significant Business in Virginia

Defendants claim first that jurisdiction cannot be exercised over Cytek (the website operator) because the company's contacts with Virginia are supposedly "minimal and entirely electronic in nature." *See Defs. Br.*, p. 6. Cytek <u>admits</u>, however, that its XXXMATCH.COM / EROTICMATCH.COM dating service[1] has 8,595 paid subscribers who reside in Virginia, which means the company is likely generating at least a *million dollars* a year in revenue from Virginia sources. *See* D.I. 35-3, ¶13[2]; *Kane Decl.*, ¶¶17-18, Exs. 16-17. In addition, the company pays four Virginia residents to refer new subscribers (many of whom presumably are also from Virginia) to the website, *see* D.I. 35-3, ¶12, and it directly solicits new Virginia subscribers by prominently advertising the number of members it has in a given geographic area, such as Arlington or Charlottesville. *See Kane Decl.*, Ex. 18; Declaration of Whitney Remily ("Remily Decl."), Exs. A-D. Such contacts are hardly "minimal."

---

[1]  Although Defendants use two home pages (XXXMATCH.COM and EROTICMATCH.COM), they are gateways to the same service. *See Kane Decl.*, ¶16, Ex. 15.

[2]  Cytek's claim that some unnamed "Canadian company" has been contracted by Cytek to perform the technical work of operating the websites, *see* D.I. 35-3, ¶¶11-13, does not affect the personal jurisdictional analysis. At best, this third party contractor would be considered Cytek's agent, meaning that its contacts with the forum state would still be imputed to Cytek. *Accord, e.g.,* Va. Code Ann. § 8.01-328.1 ("[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action"); *Mitrano,* 377 F.3d at 407; *see also Jones v. Frazier*, 2009 WL 2601355, *4 n.2 (E.D. Va. 2009) ("An agent's actions can be attributed to the principal for purposes of personal jurisdiction.").

This Court recently addressed a situation remarkably similar to the one presented here—namely, whether a foreign company was subject to personal jurisdiction in Virginia by operating an adult-oriented website that infringed the plaintiff's trademark. *See Bright Imperial Ltd. v. RT MediaSolutions, S.R.O.*, 2012 WL 1831536 (E.D. Va. 2012) (attached as *Kane Decl.*, Ex. 19). The facts presented in *Bright Imperial*, however, were much less compelling than those here.

For example, the website at issue in *Bright Imperial* was primarily in the German language and it had only *sixteen* Virginia users (out of 1.8 million), who collectively generated just $1,620 in revenue. *See id.* at *6, *8. Here, in contrast, Cytek operates an English-language website that targets Virginia with advertising (*see Remily Decl.*, Exs. A-B), and it has almost *five hundred times* the number of Virginia users and Virginia-sourced revenue as was at issue in *Bright Imperial*. *See* D.I. 35-3, ¶13. Moreover, the nature of the services Cytek provides (like those in *Bright Imperial*, *see* 2012 WL 18313636, *6) fosters an "ongoing interaction" between Virginia users and the XXXMATCH.COM and EROTICMATCH.COM websites, such as through the need for users to upload (and update) their profiles, to repeatedly "search" the Cytek website for other Virginians who might be interested in dating, and to use the website interface to interact with other users. *See Kane Decl.*, ¶21, Exs. 16-17. In addition, Cytek (or its agent, which may be Kamparri; *see infra*) regularly charges Virginia customers a monthly fee, *see Kane Decl.*, Exs. 16-17, a further fact not present in *Bright Imperial*.

Applied against the *Bright Imperial* "general framework" of factors to consider when determining whether a defendant "expressed a manifest intent to target" Virginia, the actions of Cytek therefore easily support the exercise of jurisdiction. The number of contacts with Virginia (such as paid subscribers) is significant; the quality of those contacts (which lead a continuous and ongoing relationship, including regularly billing of customers) is high; and the overall focus

of the website activity (namely, soliciting and encouraging relationships between individual Virginians; *see Kane Decl.*, Ex. 18; *Remily Decl.*, Exs. A-B) confirms Cytek's "manifested intent to target the forum."   *Cf. Bright Imperial*, 2012 WL 1831536 at *6.   Cytek thus must be considered to have purposefully availed itself of the forum and is properly subject to jurisdiction here.

## 2.      The Two Fiesta Entities Have the Authority to Control Cytek's Actions

Fiesta (Anguilla) and Fiesta (Barbados) own (or in one case "owned")[3] the infringing EROTICMATCH.COM and XXXMATCH.COM trademarks and have licensed Cytek to use the names. *See* D.I. 35-2, ¶6, D.I. 35-4, lines 4-10.  Both "Fiesta" entities were aware of Cytek's use of the infringing trademarks in the United States, *see id.,* and thus, by extension, Virginia, *see Mrs. U.S. Nat. Pageant, Inc. v. Miss U.S. Organization, LLC*, 2012 WL 2870218, *6 (W.D.N.Y. 2012) (where defendants solicited business nationwide "they should not be heard to complain if they are haled into court in one of those states as a result of that activity"); *Aitken v. Comm'ns Workers of Am.*, 496 F. Supp. 2d 653, 660 (E.D. Va. 2007) (ignorance of specific contacts with forum not relevant to jurisdictional analysis), and by operation of law, both were on notice as to Match.com's rights in the MATCH.COM name.  *See* 15 U.S.C. §§1072, 1115(b).  As trademark owners, both companies also represented when they filed their trademark applications that they controlled the use of the marks by their licensee (Cytek), *see Kane Decl.*, Ex. 20 (*Trademark Manual of Examining Procedure* ("*TMEP*"), §1201.03(f) (Oct. 2012 ed.)), and during the

---

[3]   On 7/6/2012, the date that its response to Match.com's amended complaint was due, Fiesta (Barbados) purported to transfer its interest in the XXXMATCH.COM domain name to Fiesta (Anguilla), which at that time had not yet been served in this action.  The "officer" for each Fiesta party was the same—Defendant David Rickham; *see Kane Decl.*, Ex. 3—thus suggesting that the transfer was anything other than an arms-length transaction.  For purposes of this motion, however, it is not necessary to unravel this transaction.  The fact remains that Fiesta (Barbados) was a licensor of Cytek at the time of the infringement, just as was Fiesta (Anguilla).

registration process, the companies even provided the U.S. Trademark Office with screen shots showing Cytek's use of the infringing names, including the highlighting of the MATCH.COM name and the additional use of the Match.com "LOVE IS COMPLICATED" mark:




**Submitted by Fiesta (Anguilla)**          **Submitted by Fiesta (Barbados)**

*See Kane Decl.*, Exs. 21-22; *compare with* D.I. 6, ¶21, Exs. E-F (recent examples of use)

Based on the above, one may readily infer that both Fiesta (Anguilla) and Fiesta (Barbados) had actual knowledge of the unlawful activities complained of in this case, but chose not to stop Cytek's infringing use (as was their right as the trademark owners).  *See also* D.I. 6, ¶24 (Match.com made similar allegations in its amended complaint).  In addition, because any goodwill associated with the use of a trademark by a licensee inures to the benefit of the trademark owner, *accord, e.g.,* 15 U.S.C. §1055; *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, 220 F. Supp. 2d 289, 294 (S.D.N.Y. 2002) (explaining that it is a "basic tenet of trademark licensing law" that absent an express transfer, "any goodwill developed by the licensee through its use of the mark inures solely to the benefit of the licensor"), the two Fiesta entities have reaped substantial financial benefits (above and beyond any direct license payments) from the exploitation of the EROTICMATCH.COM and XXXMATCH.COM trademarks by Cytek, including any benefit associated with use of those marks in Virginia.

When a foreign licensor contracts to have a party provide services in a forum where the licensor reasonably knew they would be provided, courts have found sufficient contacts for the exercise of personal jurisdiction.  *See e.g., Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) ("[D]efendants, acting in consort, placed the accused fan in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there."); *accord Akeva L.L.C. v. Mizuno Corp.*, 199 F. Supp. 2d 336, 340-341 (M.D.N.C. 2002) (agreeing with *Beverly Hills Fan* and finding no distinction between manufacturer and licensor in stream of commerce analysis).  Here, the Fiesta entities knew (or should have known) that Cytek's use of their trademarks would be targeted at Virginia.  *See generally supra*; *see also Remily Decl.*, Exs. A, B (advertising targeting the forum); *Kane Decl.*, Exs. 21-22 (Trademark Office submissions).  The exercise of personal jurisdiction over the Fiesta entities would therefore be proper.  *See J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780, 2788 (2011) (holding that a court may exercise jurisdiction where a defendant targeted a particular forum.)

Beyond the above, the evidence also supports the reasonable inference that Cytek and the two Fiesta entities are related companies subject to common control or ownership.  For example, and as noted (*see supra*), Defendant David Rickham is a director of both Fiesta (Barbados) and Fiesta (Anguilla), and he executed a "left-hand/right-hand" transfer of the XXXMATCH.COM trademark from "Barbados" to "Anguilla" by signing on behalf of *both* companies, which is hardly an arms-length transaction.  *See Kane Decl.*, Ex. 3; *see also* D.I. 35-2, ¶5 (no mention of any compensation exchanged).  Meanwhile, Cytek and Fiesta (Anguilla) can be directly linked by the fact that both companies profess to share the same "primary place of business," which is a

8

small, single-story building that could not house multiple legitimate entities. *Compare* D.I. 35-3, ¶2 *with* D.I. 35-4, lines 2-3; *see Kane Decl.*, Ex. 5-12. And Fiesta (Barbados) and Cytek can be linked through a joint filing they made in the U.S. Trademark Office, in which they represented that they (along with a third party) "individually and <u>collectively</u> operate several on-line success businesses, including … dating sites …" *See Kane Decl.*, Ex. 23, ¶2 (emphasis added).

Further, there is also evidence that Cytek holds itself out to be a web site marketing and development *consultant*, not an actual website operator. *See Kane Decl.*, Ex. 24; D.I. 35.3, ¶¶10-11. This evidence, coupled with evidence (discussed below) that Kamparri is the party that directly benefits financially from the infringing activities (*see infra*), reinforces the inference that Cytek, the Fiestas, and Kamparri are all mere foreign shells, subject to common control and set up in an attempt to diffuse responsibilities as broadly as possible, just so that Defendants could make the very claims they raise here. Consequently, this Court can and should exercise jurisdiction over all the parties. *Cf. Oakley, Inc. v. Jofa AB*, 287 F. Supp. 2d 1111, 1116 (C.D. Cal. 2003) (plaintiff made a "a prima facie showing that personal jurisdiction exists" where the foreign parent company, although contending it was merely a holding company, actually "acted in consort with [domestic] Defendants to place the accused [product] in the stream of commerce, . . . [and] knew that the accused visor was being sold in California"); *cf. also Battenfeld of America Holding Co. v. Baird, Kurtz & Dobson*, 45 F. Supp. 2d 1109, 1117 (D. Kan. 1999) (controversy regarding extent to which alleged "mere holding company" controlled its subsidiary and used it as an agent or instrumentality of its illegal scheme was sufficient to confer personal jurisdiction over that holding company based on its subsidiary's contacts with Kansas); *Cole v. Tobacco Inst.*, 47 F. Supp. 2d 812, 817 (E.D. Tex. 1999) (finding personal jurisdiction over foreign holding company that employed its subsidiaries to perpetuate fraud).

### 3.      Kamparri is Transacting Business in Virginia Through an Agent

The final Moving Defendant is Kamparri Trading, the Cypriot company that owns the domain names and licenses them to Cytek for use.  According to the company, its "only contacts" with the United States has been registering the domain names through a company in Florida and authorizing Florida counsel to bring the now-dismissed declaratory judgment action. *See* D.I. 35-1, ¶12.  The evidence Match.com has found, however, suggests that is simply untrue.

According to online testimonials posted on the U.S. consumer complaint website "scambook," Kamparri has contracted with a consumer debt collection company in Ohio known as "ERS" and has repeatedly used ERS to try to collect on debts associated with consumers' use of the XXXMATCH.COM website.  *See Kane Decl.*, Exs. 25-29.  Setting aside whether many of these collection efforts may actually be fraudulent (as many of the posters claim; *see, e.g., id.*, Exs. 25-29, these postings confirm that Kamparri is the entity that charges and receives payment from U.S. consumers for their use of the infringing XXXMATCH.COM website:





This evidence directly contradicts Kamparri's assertions that its "only contacts" with this country was registering the domain names and bringing suit in Florida, and that it merely licenses the domain names to Cytek, which then supposedly uses them "for its *own* commercial purposes."  *Cf.* D.I. 35-1, ¶¶11-12 (emphasis added).  Instead, the most reasonable inference to be made based on this evidence (if one follows the money) is that the websites are all being directed by, and operated for the benefit of, Kamparri, thus making Kamparri a critical party to

this case.   Kamparri would also have to be considered the primary recipient of the revenue generated by the 8,595 Virginia subscribers to the websites, further confirming it is subject to personal jurisdiction for the same reasons discussed with respect to Cytek.  *See* pp. 4-6, *supra*.

### 4.      Discovery Would Likely Confirm the Existence of Personal Jurisdiction

Based on the evidence discussed above, and drawing "the most favorable inferences for the existence of jurisdiction," *see Combs*, 886 F.2d at 676, Match.com submits that it has established a *prima facie* case for the exercise of personal jurisdiction over each of the Moving Defendants.   However, should the Court disagree, Match.com respectfully requests that it be afforded the opportunity to conduct limited discovery so as to confirm that jurisdiction may be exercised over the Defendants by this Court pursuant either to Fed. R. Civ. P. 4(k)(1) or 4(k)(2).

It is well settled that when plaintiff can show that discovery is necessary in order to meet defendant's challenge to personal jurisdiction, "a court should ordinarily permit discovery on that issue unless plaintiff's claim appears to be clearly frivolous."  *See, e.g., Compagnie des Bauxites de Guinee v. L'Union,* 723 F.2d 357 (3rd Cir. 1983); *Enterprise Intern. v. Corporacion Estatal Petrolera,* 762 F.2d 464, 475 (5th Cir. 1985); 4 J. Moore, J. Lucas & G. Grother, *Moore's Federal Practice,* § 26.56(6) (2d ed. 1987).   It is only when a plaintiff's claim of personal jurisdiction "appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants," that a court should deny jurisdictional discovery on the grounds that it would be a "fishing expedition."  *See Rich v. KIS California, Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988); *see also McLaughlin v. McPhail,* 707 F.2d 800, 806–807 (4th Cir. 1983).

Here, Match.com does not propose to go fishing.   The publicly available evidence that Match.com was able to locate suggests that many (if not all) of the Moving Defendants are closely related entities, likely subject to common control.   Further, the "scambook" material referenced above indicates the Kamparri, as evidenced by its declaration (*cf.* D.I. 35-1, ¶12), is

hiding (by deliberately misstating) the depth of its involvement in the complained-of infringement, calling into question the accuracy of all of Defendants' claims.

Jurisdictional discovery would permit Match.com to get to the bottom of the matter and confirm the extent to which each of the Defendants has directed activities into either Virginia or (in accordance with Rule 4(k)(2)) the United States in general. Match.com would anticipate taking discovery of each of the parties, as well as serving third-party subpoenas on entities such as "ERS." If there is any question as to jurisdiction, such limited inquiries should be allowed.

**B.      The Complaint States Proper Claims for Counterfeiting and Infringement**

Beyond the issue of personal jurisdiction, the Moving Defendants also challenge the sufficiency of Match.com's pleading. Match.com's claims, though, are hardly speculative; they are supported not only by Match.com's pleadings, but also by the exhibits attached to the amended complaint, and which are considered part of the pleading.

**1.      The Amended Complaint States a Proper Claim for Counterfeiting**

To state a claim for trademark counterfeiting, a party must allege that the defendant (1) intentionally used a counterfeit mark in commerce, knowing it to be counterfeit, (2) used the mark in connection with the sale, offering for sale, or distribution of goods or services, and (3) used the mark in a such a way as to be likely to cause confusion or deceive. *See Chanel, Inc. v. Banks*, 2011 WL 121700, *5 (D. Md. 2011); 15 U.S.C. §§1114(1), 1116(d), 1127. In its amended complaint, Match.com properly pled each element of this claim. *See e.g.,* D.I. 6, ¶¶19 (Defendants offer dating services), 20 (Defendants intended to confuse consumers into believing that their dating services emanate from Match.com), 21 (Defendants used the MATCH.COM

13

mark by highlighting that portion of the name), 24 (each Defendant had actual knowledge of the counterfeit activities and facilitated or ratified the infringement), 26-29, Exs. E-G.[4]

Moving Defendants' primary contention is that their display and highlighting of the phrase "MATCH.COM" on the EROTICMATCH.COM and XXXMATCH.COM websites cannot, as a matter of law, be considered counterfeit activity because they supposedly are not using a mark that is either "identical" or "substantially indistinguishable" to MATCH.COM itself. *See Defs. Br.*, pp. 12-13. Defendants, however, are wrong on both counts.

First, by highlighting the phrase "MATCH.COM," Defendants *are using* the MATCH.COM mark. The differences in color, capitalization, and relative size between "XXX" and "MATCH.COM," and the differences in color between "EROTIC" and "MATCH.COM" (coupled with the infringing use of Match.com's "LOVE IS COMPLICATED" mark), *see* D.I. 6, Exs. E, F, creates the commercial impression among consumers that Defendants' mark is "MATCH.COM," with additional descriptive matter ("XXX" or "EROTIC") appended to it, similar to how MATCH.COM has used marks such as MY MATCH. *Cf. id.*, ¶16. At the very least, this presents a jury question. *See, e.g., TMEP*, §807.14(e)(ii) (the use of color can, in some cases "have a significant impact on the commercial impression created by [a word] mark").

More fundamentally, though, a reasonable jury could also find that Defendants' use of EROTICMATCH.COM and XXXMATCH.COM "substantially indistinguishable" from use of MATCH.COM itself, especially considering the manner in which the marks are displayed,

---

[4] Match.com has also alleged a claim of counterfeiting based on Defendants' use of the tagline "LOVE IS COMPLICATED. SEX IS SIMPLE," which is substantially indistinguishable from Match.com's registered LOVE IS COMPLICATED. MATCH.COM IS SIMPLE mark. *See* D.I. 6, ¶¶19, 20, 22-24, 26-29, Ex. F. Defendants, however, have not challenged the sufficiency of this claim except as to the scope of the service. *Cf. generally Defs. Br.*, pp. 12-13. Thus, the similarity of these counterfeit and registered marks do not need to be addressed in detail here.

including (as noted above) the further use of the "LOVE IS COMPLICATED" mark.  As the Fourth Circuit has explained, "[a] mark does not have to be an exact replica of a registered trademark to be deemed a counterfeit."  *United States v. Chong Lam*, 677 F.3d 190, 199 (4th Cir. 2012).  To hold otherwise would "allow counterfeiters to escape liability by modifying the registered trademarks of their honest competitors in trivial ways."  *Id.* (quoting *United States v. Guerra*, 293 F.3d 1279, 1288 (11th Cir. 2002), which was quoting "Joint Statement on Trademark Counterfeiting Legislation," 130 Cong. Reg. 31,675 (1984)).  The Fourth Circuit further noted that it "has only once held that two marks were so divergent that, as a matter of law, no rational jury could find one was a counterfeit of the other."  *See id.*, p. 199 (referencing *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 269 (4th Cir. 2007), a case where the court based its decision upon "marked differences between the legitimate and allegedly counterfeit goods, including their distinct names, the different letters used in the respective monograms, their divergent design and color patterns, and that the allegedly counterfeit mark was displayed on dog toys, rather than handbags"); *cf. Defs. Br.*, p. 12 (suggesting that the court relied solely on the differences between the two word marks).

Consequently, the rule in this Circuit is that "a good displaying an allegedly counterfeit trademark must possess <u>pronounced differences</u> from a legitimate trademarked good for [a court] to declare that no rational jury could find that it was a counterfeit."  *Chong Lom*, 677 F.3d at 199 (emphasis added).  Adding further matter to a registered mark (as Defendants have done here) is not *per se* sufficient to avoid a counterfeiting claim, especially when the marks are evaluated in the context of their actual use, as is proper.  *See id.*, pp. 196, 198-199, 200 (finding evidence that defendant used a plaid background with an "equestrian knight overlay" sufficient to support a claim that defendants counterfeited the registered Burberry "Check" mark, which "[did] not

include an equestrian knight," especially in light of evidence that Burberry often also used a "knight" [albeit a substantially different one; *see id.*, n.6] on its products).  Defendants' claim that the mere addition of "EROTIC" or "XXX" to the MATCH.COM is sufficient as a matter of law to avoid a claim of counterfeiting must therefore be rejected, especially given the other steps that Defendants have taken (highlighting "MATCH.COM," using "LOVE IS COMPLICATED") to associate themselves and their services with the well-known MATCH.COM service.

Defendants' fallback argument (*Defs. Br.*, p. 13) is that they are supposedly not using the EROTICMATCH.COM and XXXMATCH.COM marks for any services covered within the scope of Match.com's federal registrations, which cover "[c]omputer services, namely providing information in the nature of <u>on-line dating</u> and <u>introduction services</u>."  *See* D.I. 6, ¶16, Exs. A(1)-(3) (emphasis added).  Defendants' arguments in this regard border on the frivolous.

Defendants <u>admit</u> that they use their marks to offer online "dating services" (albeit directed at a certain subset of adults).  *See Defs. Br.*, p. 13.  In fact, the registration for EROTICMATCH that Defendants attached to their brief (*see* D.I. 35-6) *describes* Defendants' services as "dating services," as does the current application for XXXMATCH.COM.  *See Kane Decl.*, Ex. 4.  And beyond that, Defendants have not only admitted that they offer "online dating services," *see, e.g.,* D.I. 35-6, but their websites *advertise* that they such offer such services, including (and contrary to Defendants' claim; *cf. Defs. Br.*, p. 13) dating that is intended to lead to "relationships."  *See Kane Decl.*, Ex. 18 ("Get Dates That Exceed Your Expectations. … Whether you are looking for casual encounters *or long term relationships*, we have someone for everyone.")  (emphasis added).  Thus, not only do Defendants' services fall squarely within the literal scope of Match.com's federal registrations, Defendants are actually targeting consumers who might otherwise consider using a more traditional dating service.

16

### 2.     The Amended Complaint Sufficiently Differentiates Among the Parties

Moving Defendants next complain that Match.com has supposedly not sufficiently described the interworking of the Defendants, seeking to benefit from their deliberate fracturing of responsibilities among ostensibly "separate" companies located in Cyprus, Anguilla, and Barbados (all of whom, though, oddly enough, profess to have ties to Florida) to make it difficult for Match.com to know "who has done what, if anything." *See Defs. Br.*, p. 14.  Defendants, though, fail to explain *what* counts are supposedly unsupported as to *which* Defendant.  That bit of irony aside, however, Match.com respectfully submits that its amended complaint, which includes allegations as to each Defendant's actions, sufficiently pleads proper claims.  *See generally* D.I. 6, ¶¶19-24.  Moreover, it is well settled that differentiating among the acts of intertwined defendants requires a fact intensive inquiry and need not be resolved at the pleading stage.  *See Hanamint Corp. v. Alliant Mktg. Grp., LLC*, 481 F. Supp. 2d 444, 450-51 (M.D.N.C. 2007) (finding that issues concerning precise relationship of defendant companies "involve factual determinations that are inextricably intertwined with the merits of th[e] case and thus are more appropriately considered on the merits after the completion of discovery, not by a jurisdictional ruling" and denying motions to dismiss for lack of personal jurisdiction) (citing *South Carolina State Ports Auth. v. Silver Anchor, S.A., (Panama)*, 23 F.3d 842, 847 (4th Cir. 1994) (reversing district court, in part, because it improperly resolved a linchpin factual issue in a jurisdictional ruling instead of appropriately reserving that issue for a proceeding on the merits); *see also Denenberg v. Led Techs., LLC*, 2010 WL 3582994, *5 (D. Neb. 2010) (denying motion to dismiss, despite the fact that "[t]here is very little evidence before the court as to the relationship between the [out-of-state] defendant and the independent consultants/agents," because it was "plausible that following discovery plaintiff can produce

evidence regarding the knowledge of the defendant and/or evidence of the relationship between the defendant and the third parties that would establish personal jurisdiction").

### 3.      The Amended Complaint States a Proper Claim for Secondary Liability

Lastly, Defendants assert that Match.com has failed to state a proper claim for contributory infringement. *See Defs. Br.*, pp. 16-17.   All that is required, however, is that the plaintiff plead that a party has continued to supply a third party with the means for continuing to engage in unlawful activity while having actual or constructive knowledge of the infringement. *See Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982); *Size, Inc. v. Network Solutions, Inc.*, 255 F. Supp. 2d 568, 572 (E.D. Va. 2003); F*onovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 264-65 (9th Cir. 1996).  Match.com's pleadings readily meet that test.

Specifically, Match.com has alleged that each Defendant had actual knowledge of the infringement by Cytek (the website operator) and materially contributed to (and to date continue to contribute to) the infringement, such as (for Kamparri) by continuing to license Cytek to use the eroticmatch.com and xxxmatch.com domain name and (for the two Fiestas) to use the EROTICMATCH.COM and XXXMATCH.COM trademarks.  *See* D.I. 6, ¶24; *see also SoftView LLC v. Apple Inc.*, 2012 WL 3061027, *7 (D. Del. 2012) (finding an accused patent infringer to be on notice of the asserted patents after the filing of the initial pleading).  Match.com also alleged that David Rickham was simultaneously a director of both "Fiestas," *see id.*, ¶¶10, 24 (a fact since confirmed; *see Kane Decl.*, Ex. 3), and that Cytek and Fiesta (Anguilla) share the same corporate "address."  *See* D.I. 6, ¶¶7, 8.   In addition, it is a matter of public record that Match.com protested the application to register XXXMATCH.COM at the U.S. Trademark Office back in May 2011, *see Kane Decl.*, 30, Ex. 30, thus putting at least both Fiestas (who share corporate officers and use the same trademark counsel; *see id.*, Exs. 3-4) on notice of

Match.com's concerns at that time.   These allegations thus support not only the reasonable inference that Kamparri and the Fiestas each could have—if they had wanted to—brought an end to Cytek's infringement by exercising authority over their intellectual property (the domain names and the trademarks), they also support a finding that the Defendants are subject to common control.   Either prong is sufficient to support a claim of secondary liability.   *Cf. Government Employees Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 705 (E.D. Va. 2004).

**C.      The *In Rem* Claims May Proceed if Personal Jurisdiction Over Kamparri is Lacking**

Moving Defendants' third motion, which comprises a request to strike portions of Match.com's amended complaint and effectively dismiss the *in rem* claims unconditionally (*see Defs. Br.*, pp. 17-20), fare no better.   To begin with, this Court has explained that motions to strike are generally disfavored "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Fred Hutchinson Cancer Research Center v. BioPet Vet Lab, Inc.*, 2011 WL 2551002, *2 (E.D. Va. 2011) (quoting *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001)).   Thus, before the Court will consider exercising its discretion and acting pursuant to Rule 12(f), it must "determine that the challenged allegations are 'so unrelated to the plaintiff's claims as to be unworthy of any consideration … and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party.'" *Francisco v. Verizon South, Inc.*, 2010 WL 2990159, *5 (E.D. Va. 2010) (quoting 5C Wright & Miller § 1380 (3d ed. 2004)) (ellipses added).   The Court will also "view the pleading under attack in a light most favorable to the pleader." *See id.*

Here, Defendants do not even attempt to argue that the challenged subject matter is "prejudicial." *Cf. generally Defs. Br.*, pp. 17-18.   In fact, there is nothing about the challenged matter—which comprises a claim for jurisdiction in the alternative and factual allegations

regarding the subject domain names; *see* D.I. 6, ¶¶4, 12, 13—that is even controversial.  Striking this matter from the pleading would thus serve no purpose other than to delay proceedings.

Regarding Defendants' broader request that this Court refuse to exercise *in rem* jurisdiction, their concerns are premature (and unfounded).  As Defendants are aware (*see Defs. Br.*, p. 18), before an *in rem* action may go forward, the court in the jurisdiction where the domain name Registrar resides (here, this District) must find that the plaintiff cannot "obtain in personam jurisdiction" over the domain name owner (Kamparri Trading).  *See* 15 U.S.C. §1125(d).  This Court, however, has not yet ruled on the propriety of exercising personal jurisdiction over Kamparri.  If the Court finds jurisdiction (as Match.com believes is proper; *see supra*), then obviously Match.com would not be seeking to invoke *in rem* jurisdiction, rendering Defendants' concerns moot.  *See* D.I. 6, ¶4 (raising *in rem* jurisdiction in the *alternative*).

On the other hand, should this Court ultimately find that personal jurisdiction is lacking over Kamparri either under Rule 4(k)(1) or 4(k)(2), *but see generally Kane Decl.*, Exs. 25-29, it would be proper then to afford Match.com the opportunity to pursue its *in rem* claims.  Contrary to Defendants' contention (*see Defs. Br.*, p. 19), there is no evidence that Kamparri (assuming its contacts with this forum and with the United States are insufficient to confer jurisdiction) is presently subject to personal jurisdiction in *any* other court.  *Accord* D.I. 35-1, ¶12 (claiming that Kamparri has no contacts with the United States other than registering the domain name and brining the now-dismissed civil action); *but see Kane Decl.*, Exs. 25-29.[5]

---

[5] After all, the Florida action (through which Kamparri *temporarily* subjected itself to the Florida court) was *transferred to this Court* and then dismissed, *see Kane Decl.*, Ex. 2.  Consequently, Match.com would not be able to bring a case against Kamparri in Florida because jurisdiction at the moment is lacking there. *See* 15 U.S.C. §1125(d) (focusing on whether the trademark owner is able "*to obtain* in personam jurisdiction" over the domain name owner).

Further, splitting this case between two courts (this one and whichever one had jurisdiction were to hear the domain name case) and having them both address the same question of whether use of EROTICMATCH.COM and XXXMATCH.COM violates any trademark rights of Match.com, *see* 15 U.S.C. §1125(d) (requiring the "domain name" court to assess infringement under §§1125(a) and (d)); *cf.* D.I. 6, ¶¶32-44 (asserting claims here under §§1125(a) and (d)), would be inefficient and could potentially lead to inconsistent results.

**CONCLUSION**

For the above reasons, Plaintiff, Match.com L.L.C., respectfully requests that this Court

deny each of the motion brought by the Moving Defendants and allow this case to proceed.

Respectfully submitted,


Dated: January 4, 2013                    /s/ Erik C. Kane_____
                                          Edward T. Colbert
                                          William M. Merone (VSB 38861)
                                          Erik C. Kane (VSB 68294)
                                          KENYON & KENYON LLP
                                          1500 K Street, N.W.
                                          Washington, DC  20005
                                          Tel.: (202) 220 – 4200
                                          Fax: (202) 220 – 4201

                                          *Counsel for Plaintiff,*
                                          *Match.com, L.L.C.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of January 2013, the foregoing document(s) were filed through the ECF system and are being served on all counsel of record or pro se parties in this matter who are identified on the Service List below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

Dated: January 4, 2013

                                          __/s/ Erik C. Kane_____
Edward T. Colbert
William M. Merone (VSB 38861)
Erik C. Kane (VSB 68294)
KENYON & KENYON LLP
1500 K Street, N.W.
Washington, DC  20005
Tel.: (202) 220 – 4200
Fax: (202) 220 – 4201

*Counsel for Plaintiff,*
*Match.com, L.L.C.*

## SERVICE LIST

Thomas Murphy
Robert E. Greenberg
**FRIEDLANDER MISLER, PLLC**
5335 Wisconsin Avenue, NW
Suite 600
Washington, DC 20015
Telephone: (202) 872-0800
Facsimile: (202) 857-8343

Jeffrey D. Feldman
Susan J. Latham
**FELDMAN GALE, P.A.**
One Biscayne Tower, 30th Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-5001
Facsimile: (305) 358-3309

*Counsel for Defendants: Cytek, Ltd., Fiesta International, Inc. (Barbados), Fiesta Catering International, Inc. (Anguilla), and Kamparri Trading Limited.*