IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MATCH.COM, L.L.C.            )
                             )
            Plaintiff,       )     Civil Action No. 1:12-cv-363
                             )     (AJT/IDD)
        v.                   )
                             )
FIESTA CATERING INTERNATIONAL, )
INC., et al.,                )
                             )
            Defendants.      )
_____)

## MEMORANDUM OPINION

The plaintiff, Match.Com, L.L.C. ("Match") claims that the defendants Fiesta Catering International, Ltd. (Barbados) ("Fiesta Barbados"), Fiesta Catering International, Inc. (Anguilla) ("Fiesta Anguilla"), Cytek, Ltd. ("Cytek"), Kamparri Trading Ltd. ("Kamparri"), and David N. Rickham (collectively "defendants") violated various trademark and copyright laws in connection with their use of the domain names XXXMATCH.COM and EROTICMATCH.COM, and associated marketing activities.[1] Presently pending are Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [Docs. No. 35, 36], Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted [Doc. No. 37], and Defendants' Motion to Strike *In Rem* Allegations and to Drop the Domain Name Defendants as Parties [Doc. No. 38] (collectively "the Motions"). A hearing was held on

---

[1] Specifically, Match alleges (1) infringement of a registered trademark in violation of 15 U.S.C. § 1114, including through the use of a counterfeit mark as defined in 15 U.S.C. §§ 1116(d) and 1127 (Count I); (2) unfair competition, false representation, and false designation of origin in violation of 15 U.S.C. § 1125(a) (Count II); and (3) cyberpiracy in violation of 15 U.S.C. 1125(d) (Count III).

the Motions on January 25, 2013, following which the Court took them under advisement. Upon consideration of the Motions, the memoranda and exhibits filed in support thereof and in opposition thereto, the arguments of counsel at the hearing, and for the reasons stated in this Memorandum Opinion, the Court will deny the Motions.

## I. BACKGROUND

The following facts appear in the record based on the allegations of the Amended Complaint and the parties' submissions in connection with Defendants' Motion to Dismiss for Lack of Personal Jurisdiction:[2]

Match is a Delaware limited liability company with its principal place of business in Dallas, Texas. Compl. ¶ 5. Match pioneered online personals when it launched its MATCH.COM® service in 1995, and is currently the largest online dating, relationship, singles, and personals service in the world. *Id.* ¶ 14. Its trademark is well known. *Id.* ¶ 15. In addition to the MATCH.COM® mark, Match has also secured trademarks for its slogan, "LOVE IS COMPLICATED. MATCH.COM IS SIMPLE." and various other "MATCH" marks.[3] *Id.* ¶¶ 15-16.

Fiesta Barbados is a Barbados corporation with its principal place of business in Barbados; Fiesta Anguilla is an Anguilla corporation with its principal place of business in Anguilla; Cytek is an entity with its principal place of business in Anguilla; Kamparri has its principal place of business in Cyprus; and Rickham is an individual who resides in California.

---

[2] For the purposes of a Rule 12(b)(2) motion, the Court may consider facts presented beyond the allegations of the Complaint. *See United States v. Maxwell*, 189 F. Supp. 2d 395, 399 (E.D. Va. 2002). *See also Wilson-Cook Medical, Inc.*, 942 F.2d 247, 252 (4th Cir. 1991).

[3] Most of these marks consist of pairing the "Match" mark with another word or phrase. Some examples include MATCH TALK®, MATCHMOBILE™, MATCH.COM PLATINUM® and MATCHWORDS®. Compl. ¶ 16.

*Id.* ¶¶ 6-10. The defendants offer "adult dating" services through the websites XXXMATCH.COM and EROTICMATCH.COM. *Id.* ¶ 19. The offending websites highlight the MATCH portion of their name in a way that is allegedly designed to confuse users, *see id.* ¶¶ 20-23, as evidenced, in part, by EROTICMATCH's slogan "LOVE IS COMPLICATED. SEX IS SIMPLE," an obvious play on Match's slogan "LOVE IS COMPLICATED. MATCH.COM IS SIMPLE." *See id.* ¶ 22. The domain names xxxmatch.com and eroticmatch.com are registered to Kamparri, who is the owner and licensor. *Id.* ¶¶ 12-13, 24. The Fiesta defendants are identified in the U.S. Trademark Office as the owners and licensors of the XXXMATCH.COM and EROTICMATCH trademarks, Rickham is listed as "Director" of Fiesta," and Cytek is identified as the "operator" of each of the infringing websites. *Id.* ¶ 24. The Complaint alleges that each defendant had actual knowledge of unlawful activity and either "induced, caused, or materially contributed to that activity, or ratified and adopted the unlawful acts." *Id.*

XXXMATCH.COM and EROTICMATCH.COM lead users to the same website. *See* Kane Decl. ¶ 16; Elias Decl. ¶ 13. Users of the website pay a monthly fee, complete a profile, and then are matched with other users. *See, e.g.,* Pl. Resp. in Opp. Ex. 15-16. Included within the functionality of the websites is the ability to prominently display the number of members in the user's given geographic area, such as Arlington or Loudon, when a user, in Virginia, for example, accesses the websites. Kane Decl. ¶ 18. Users must agree to Terms and Conditions and pay a fee to view content on the defendants' website. *Id.* Users can then chat with other members, instant message other members, email members, send friend requests, and request to meet in person. *Id.* There are 8, 595 paid subscribers who reside in Virginia, which equates to roughly one million dollars a year in revenue from Virginia. Kane Decl. ¶¶ 17-18, Elias Decl. ¶ 12. In addition, the website offers commissions to those who refer new subscribers, and at least

3

four people in Virginia have received such commissions based on their referrals. Elias Decl. ¶ 12.

## II. Personal Jurisdiction

In the face of defendants' jurisdictional challenge, the plaintiff bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence. *Carefirst of Md. V. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citation omitted); *Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 523 (E.D. Va. 2009) (citations omitted). However, where, as in this case, the court decides a Rule 12(b)(2) motion without conducting an evidentiary hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *See Carefirst*, 334 F.3d at 396. In deciding whether the plaintiff has established a *prima facie* case of personal jurisdiction "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs v. Bakker*, 886 F. 2d 673, 676 (4th Cir. 1989); *Prod. Grp. Int'l, Inc. v. Goldman*, 337 F. Supp. 2d 788, 793 (E.D. Va. 2004).

"Resolution of a personal jurisdiction challenge by a non-resident defendant requires a two-step inquiry." *Prod. Grp. Int'l*, 337 F. Supp. 2d at 793 (citing *Ellicott Mach. Corp., Inc. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993)). First, the Court must determine whether Virginia's long-arm statute authorizes jurisdiction over the defendant considering the facts of this case. *Id.* Second, the Court must determine whether the exercise of personal jurisdiction comports with the due process requirements of the Fourteenth Amendment to the United States Constitution. *Id.; see also Consulting Eng'rs Corp. v. Geometric, Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). Virginia's long-arm statute permits specific jurisdiction where at least one of the statutory prerequisites is satisfied. *See Young v. New Haven Advocate*, 315 F.3d 256,

261 (4th Cir. 2002) (citation omitted). Because Virginia's long-arm statute has been construed to extend personal jurisdiction to the full extent permitted by the Due Process Clause, in many cases the "statutory and constitutional inquiries coalesce into the question of whether [the defendant] had sufficient minimum contacts with Virginia to satisfy due process requirements." *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 450 (4th Cir. 2000). *See also Consulting Eng'rs Corp.*, 561 F.3d at 277.

### a. Prong One: The Virginia Long Arm

Plaintiff's central jurisdictional allegation is that the defendants, acting extra-domestically, used their mark in a way that caused injury here in Virginia. For that reason, they rely on the doctrine of specific, not general, personal jurisdiction based on Virginia's long arm statute, and in particular Virginia Code § 8.01-328.1(A)(4), which provides that specific jurisdiction is appropriate over a defendant:

> (i) who causes tortious injury (ii) in Virginia (iii) by an act or omission outside of Virginia if that person (a) regularly does or solicits business in Virginia, (b) engages in any other persistent course of conduct in Virginia, or (c) derives substantial revenue from goods used or consumed or services rendered in Virginia.

*Id; see also Alitalia-Linee Aeree Italiane, S.p.A. v. Casinoalitalia.Com*, 127 F. Supp. 2d 340, 348 (E.D. Va. 2001).

Though not conceding that its activities satisfy any of the elements necessary for this Court to exercise personal jurisdiction under the above statute, defendants principally argue that personal jurisdiction does not exist under Virginia's long-arm statute because Virginia is not the "focal point" of the alleged injury and the defendants did not "direct tortious conduct at [Virginia]"; therefore, they argue, there has been no cognizable injury in Virginia,[4] citing for

---

[4] The defendants further claim that *Calder v. Jones*, 465 U.S. 783 (1984), requires that the "brunt of the harm" be suffered in the forum state. *Id.* at 789. The Fourth Circuit, however, has

5

support *Fraserside IP, LLC v. Youngtek Solutions, LLC*, No. C11-3005-MWB, 2013 WL 139510, at * 9 (N.D. Iowa January 10, 2013). In *Fraserside*, the Court declined to exercise jurisdiction over a non-resident owner and operator of a website where there was only one paying customer with an Iowa IP address and that customer had paid one dollar for the membership, the amount of visits to the site from Iowa users amounted to .14% of all visitors to the site, and the site did nothing to target Iowa residents. *Id.* at 2. The Iowa district court concluded that, based on these facts, the plaintiff failed to show sufficient injury in Iowa to bring the defendants within the long-arm statute, and, even if the injury were sufficient, the actions did not "demonstrate an intent to purposefully target Iowa," as required by due process. *Id.* at 10.

Here, the relevant facts are much different. The "focus" of defendants' efforts in this jurisdiction is much more substantial than the defendant's contacts with Iowa in *Fraserside* and, as discussed below, the defendants' activity demonstrates a clear intent to purposefully target Virginia. There are 8,595 paying subscribers in Virginia, representing at least one millions dollars in profit. In an attempt to encourage more Virginia users, the website, in effect, targets Virginia residents by advertising prominently the number of subscribers in the Virginia locale of a Virginia user of the website and offers cash rewards to Virginia residents that refer new subscribers.[5] Currently, four Virginia residents have received such rewards. The contacts with subscribers are ongoing; users agree to Terms and Conditions and pay a monthly fee. The

---

interpreted *Calder* narrowly, holding that "specific jurisdiction in the Internet context may be based only on an out-of state person's internet activity directed at [the forum state] and causing injury that gives rise to a potential claim cognizable in [the forum state]." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002). Thus, defendants are incorrect to argue that the "brunt of the harm" must be suffered in Virginia; instead, it is sufficient that the defendants directed activity into Virginia that caused harm here.

[5] That this website functionality may have comparable impacts in other jurisdictions does not lessen its jurisdictional significance in Virginia.

6

defendants have clearly evidenced their intent to target Virginia residents for the purpose of establishing for their financial benefit a Virginia community of interacting users of the allegedly infringing website. Based on the facts alleged in the Amended Complaint and in the parties' submissions in connection with Defendants' Motion to Dismiss for Lack of Personal Jurisdiction the Court finds and concludes that the plaintiff has set forth sufficient evidence to establish that the defendants caused tortious injury in Virginia by an act or omission outside of Virginia.[6]

### b. Prong Two: Due Process under the Fourteenth Amendment

For essentially the same reasons discussed above, the Court also concludes that at this stage the plaintiff has sufficiently established that the defendants' activities constitute constitutionally sufficient minimum contacts with Virginia and that those activities satisfy the other requirements for personal jurisdiction under Section 8.01-328.1(A)(4), viz., that defendants regularly do or solicit business in Virginia or otherwise engage in a persistent course of conduct in Virginia, or derive substantial revenue from goods used or consumed or services rendered in Virginia.

The constitutional inquiry focuses on whether the defendants have sufficient "minimum contacts" within Virginia such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemp't*

---

[6] The defendants also argue that the injury from trademark infringement can only occur in the state where the trademark owner resides, Def. Br. in Supp. at 5, but the cases cited establish only that the state where the trademark owner resides is one place where injury occurs, not that it is the only place. *See, e.g. Byrd v. Parsons*, 289 F. 3d 865, 876 (6th Cir. 2002) (holding that the state where the trademark owner resides is one place where injury occurs); *Indianapolis Colts, Inc. v. Metro. Baltimore Football Club, Ltd. P'ship*, 34 F.3d 410, 411 (7th Cir. 1994) ("[S]omeone who commits a tort in Indiana, should, one might suppose be amenable to suit there."). The Court finds no support for the proposition that the state where the trademark owner resides is the *only* state where the injury is felt. In fact, injury is felt wherever a defendant is using a mark in a manner that is likely to confuse consumers. *See Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005) (citing 15 U.S.C. §§ 1114, 1125).

*Comp. and Placement*, 326 U.S. 310, 316 (1945). To satisfy that standard, the Court must find that the non-resident defendants purposefully availed themselves in this jurisdiction; that is, the defendants must have "purposefully directed [their] activities at the residents of the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Id.* at 475. In the Internet context, the Fourth Circuit has adopted the following test to determine whether a defendant has purposefully availed itself in the forum state, stating:

> We conclude that a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the state, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

*ALS Scan*, 293 F.3d at 714. The Amended Complaint and accompanying record sufficiently establish that defendants both directed electronic activity into Virginia and that the activity led to injury here. Thus, the Court will focus on the level of interactivity and whether that interaction is purposeful. *See Bright Imperial*, 2012 WL 1831536 at *4 ("*ALS Scan* highlights that a website's interactivity alone cannot satisfy the due process inquiry; instead the court must, from an elevated viewpoint, consider a defendant's 'manifested intent' and purposeful targeting of the forum.").

In determining whether the level and nature of interactivity sufficiently evidences the purposeful targeting of Virginia, courts have focused on (1) the quantity of the contacts; (2) the quality of the contacts; and (3) the overall focus of the activity. *See Bright Imperial* at *6 (citing *Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 598 (E.D. Va. 2003). Here, the defendants maintain an ongoing relationship with the 8,595 paid subscribers who reside in Virginia, who represent at least one million dollars a year in revenue. In addition, at least four

Virginia residents have been paid directly to refer new subscribers to the website, and the websites directly solicit new Virginia subscribers by prominently advertising the number of members it has in a given geographic area within Virginia. Those seeking to access the websites must register, agree to the Terms and Conditions, and pay a monthly fee. Looking at the large number of contacts in Virginia, the high-level of interactivity with those contacts, the overall focus of the defendants' activity, and their manifest intention to establish an interactive user community here in Virginia, the Court finds that the plaintiff has presented sufficient evidence that defendants acted with the requisite intent to target the Virginia market. The Court has no trouble concluding that the nature of defendants' contacts and on-going interactions with Virginia, including specific compensated marketing arrangements with Virginia residents, is sufficient to put the defendants on notice that they could be haled into court in this forum.[7]

In cases where the number of Virginia contacts was much more limited than in this case, courts in this circuit have held that defendants are subject to personal jurisdiction where the nature of those contacts was ongoing. For example, in *Alitalia-Linee Aeree Italiane S.p.A. v. Casinoalitalia.com*, a defendant operated an online gambling website with only five customers in

---

[7] The Complaint alleges that Cytek is the website operator, and that the Fiesta defendants licensed Cytek to use the names. Moreover, the record shows that both Fiesta entities were aware of Cytek's use of the infringing marks in the United States. It also shows that Rickhman, as director of the fiestas, was also aware of and participated in the infringing activities. Finally, the record supports the plaintiff's allegation that Kamparri is the entity charging and receiving payment from U.S. consumers for their use of the XXXMATCH.COM website. Construing the allegations in the light most favorable to Match and "draw[ing] the most favorable inferences for the existence of jurisdiction," the plaintiff has adequately established that the defendants are all sufficiently engaged in or responsible for the infringing activity and that the Court may exercise jurisdiction over all of them. *Combs*, 886 F.2d at 676. At this stage, the plaintiff is not required to differentiate among the acts of the intertwined defendants as doing so "involve[s] factual determinations that are inextricable intertwined with the merits of the case and thus are more appropriately considered on the merits after the completion of discovery, not by a jurisdictional ruling." *South Carolina State Ports Auth. v. Silver Anchor, S.A.*, 23 F.3d 842, 847 (4th Cir. 1994). It is sufficient that the plaintiff has set forth *prima facie* evidence that the defendants knew of or participated directly in the unlawful activity.

Virginia. 128 F. Supp. 2d 340, 350 (E.D. Va. 2001). The court denied the 12(b)(2) motion because the website was "not merely a passive website," and "interact[ed] with Virginia consumers to such a degree as to put [defendant] on notice that it is purposefully directing its activities at Virginia and its residents." *Id.* That interaction included real-time interactivity with its members, in the form of online gambling, and the online payment for services by members with billing addresses in Virginia. Also applying the Virginia long-arm statute, the court in *Bright Imperial* exercised jurisdiction over a foreign company operating an adult-oriented website in Virginia, despite the fact that the website had only sixteen Virginia users, out of 1.8 million total users, who collectively generated only $1,620 in revenue. 2012 WL 1831536, at *6, *8. The court found that, even if the 16 users considered alone were insufficient to establish minimum contacts, the amount of users, coupled with the quality of the interaction with those users, satisfied the jurisdictional test. The court highlighted that the defendants maintained an ongoing relationship with the registered users, who paid for the content and received free "bonus" coins given to encourage continued interaction with the site. *Id.* at *6.

For the above reasons, the Court finds and concludes that the plaintiff has established a *prima facie* case of jurisdiction.

### III. The Defendants' 12(b)(6) Motion

Finding that the plaintiff has established a *prima facie* case of personal jurisdiction, the Court now turns to the defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted [Doc. No. 37]. Federal Rule of Civil Procedure 12(b)(6) permits the Court to dismiss those allegations which fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint and does not resolve contests surrounding the facts or merits of a claim. *See*

*Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). In assessing a motion brought pursuant to Rule 12(b)(6), the court must "assume the truth of all the facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

Although Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citation omitted). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

The defendants allege the following in support of their 12(b)(6) motion: (1) the plaintiff cannot state a claim for counterfeiting because the marks are not identical or substantially indistinguishable; (2) even if the marks are substantially distinguishable, the claim fails because the plaintiff and the defendants offer different goods or services; (3) the plaintiff has failed to adequately distinguish between the defendants; and (4) the plaintiff has failed to state a claim for contributory infringement.[8] Defendants first argue that their marks are not a counterfeit marks.

---

[8] Although the defendants move to dismiss Counts I and II, their Memorandum in Support of the Motion to Dismiss does not directly address the plaintiff's claims for trademark infringement (Count I) or unfair competition, false representation, or false designation of origin (Count II).

11

To state a claim for counterfeiting, the complaint must allege that the defendant (1) intentionally used a counterfeit mark in commerce; (2) knowing that the mark was counterfeit; (3) in connection with the sale, offering for sale, or distribution of goods, and (4) its use was likely to confuse or deceive. *See Chanel, Inc. v. Banks*, No. WDQ-09-843, 2011 WL 121700, at *5 (D. Md. Jan. 13, 2011) (citing *State of Idaho Potato Comm'n v. G& T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005); *see also* 15 U.S.C. §§ 1114(1), 1116(d), 1127. The Lanham Act defines a "counterfeit" mark as "a spurious mark which is identical with, or substantially indistinguishable from" the plaintiff's mark. 15 U.S.C. § 1127; *see also Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 269 (4th Cir. 2007). Important here, "a mark does not have to be an exact replica of a registered trademark to be deemed a counterfeit," as such a requirement "would allow counterfeiters to escape liability by modifying the registered trademarks of their honest competitors in trivial ways." *United States v. Chong Lam*, 677 F.3d 190, 1999 (4th Cir. 2012). For the Court to hold as a matter of law that the marks are not "identical" or "substantially indistinguishable," "an allegedly counterfeit trademark must possess pronounced differences from [the] legitimate trademarked good" such that no reasonable jury could find it to be counterfeit. *Id.*

Both of the allegedly infringing websites highlight the MATCH.COM portion of their domain name, use similar fonts and styles, and utilize an extremely similar slogan. Moreover, Match also owns trademarks over certain MATCHWORDS® such as MATCH TALK®, MATCH.COM PLATINUM ®, MY MATCH™, and MATCHMOBILE™. Given the wide range of marks associated with Match and the similarity of the marks, and for the reasons discussed, the Court cannot conclude as a matter of law that defendants' marks are not

"identical" or substantially indistinguishable." Rather, the Court concludes that the plaintiff has alleged facts that make plausible its claim that defendants use counterfeit marks.

The defendants next argue that, even if the marks are substantially indistinguishable, there can be no copyright infringement because the defendants use the mark for an entirely different service, presumably arguing on this additional ground that their marks cannot be deemed confusingly similar. Even assuming this is the correct standard, the Amended Complaint adequately alleges that the defendants are providing the same services. Match describes its own services as "online dating, relationship, singles, and personals" and that of the defendants as alternatively "adult dating" and "dating." Both Match and the defendants' website target singles looking for relationships, the nature of which is unclear from the pleadings. The record shows, in fact, that the services are quite similar, even if one website is more focused on the "adult' aspects of a relationship. Accepting all well-pleaded allegations as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, *see Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), the Court concludes that the Amended Complaint plausibly alleges that the defendants' offer competing services and that the use of their marks is confusingly similar to its own.

The defendants also contend that the "[p]laintiff's failure to distinguish between the defendants is fatal to it[]s attempt to meet the *Twombly* pleading standard." Def. Mem. in Supp. at 14. As discussed, *supra* n. 6, at this stage, the plaintiff is not required to differentiate among the acts of intertwined defendants, only to determine whether the plaintiff has plausibly alleged such a relationship between them to support their joint liability. The Amended Complaint alleges various wrongs committed by each defendant and alleges that the defendants each "induced, caused, or materially contributed to that activity, or ratified and adopted the unlawful

13

acts" of the other defendants. Compl. ¶ 24. Those unlawful acts are alleged in detail in the Amended Complaint. Under the circumstances of this case, including the limited extent of the plaintiff's access to information regarding the defendants, the Court concludes that the plaintiff has alleged facts that make plausible their claims against each of these defendants, who have sufficient notice of plaintiff's claims to adequately prepare a defense.

Finally, the defendants claim that the plaintiff has failed to state a claim for contributory infringement (secondary liability). Def. Mem. in Opp. At 16-17. To state a claim for contributory infringement, the plaintiff must plead that a defendant intentionally induced another to infringe a trademark, or (2) continued to supply a product to a third party with actual or constructive knowledge of the infringement. *See Inwood Labs, Inc. v. Ives Labs, Inc.*, 456 U.S. 844, 854 (1982); *see also Size, Inc. v. Network Solutions, Inc.*, 255 F. Supp. 2d 568, 572 (E.D. Va. 2003). The Amended Complaint clearly alleges that each defendant had actual knowledge of Cytek's infringing acts and materially contributed to that infringement by continuing to license or otherwise facilitate their use of the domain names and trademarks at issue. The allegations plausibly support the reasonable inference that Kamparri, the Fiestas, and Rickman each could have ended Cytek's infringement. The Court, therefore, finds and concludes that the plaintiff has stated a claim for secondary liability based on contributory infringement.

## IV. Motion to Strike

The defendants' third motion requests that this Court strike portions of Match's Amended Complaint, which would have the effect of dismissing the *in rem* claims. Federal Rule of Civil Procedure 12(f) permits a district court, on motion of a party, to "order stricken from any pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Id.* "Rule 12(f) motions are generally viewed with disfavor because striking a portion

14

of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (citation and internal quotation marks omitted). "Thus, it is a 'generally accepted view that a motion to strike...ought not to be granted in the absence of a clear showing of prejudice to the movant." *Builders Mut. Ins. Co. v. Dragas Mgmt. Corp.*, 709 F. Supp. 2d 432, 437 (E.D. Va. 2010) (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382 (3d ed. 2004)).

The plaintiff's assertion of *in rem* jurisdiction is made, in the alternative, in the event that the Court ultimately determines it cannot exercise personal jurisdiction over the domain name owner Kamparri. *See* 15 U.S.C. § 1125(d). The Court has not yet ruled conclusively on personal jurisdiction. It is, therefore, premature to strike plaintiff's claims based on *in rem* jurisdiction at this time, particularly since there is no prejudice to the defendants. If the Court ultimately determines that it does not have personal jurisdiction over Kamparri, the plaintiff may proceed on its *in rem* claims.

## V. CONCLUSION

For the above reasons, the Court will deny the defendants' Motion to Dismiss for Lack of Personal Jurisdiction [Doc. No. 35, 36], deny the defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief May be Granted [Doc. No. 37] and deny the defendants' Motion to Strike *In Rem* Allegations and to Drop the Domain Name Defendants As Parties [Doc. No. 38].

An appropriate Order will issue.

/s/ Anthony J. Trenga
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
January 31, 2013